## WASHINGTON CLUB v. UNITED STATES.

Court of Claims.  February 10, 1930.

No. H–209.

F. Regis Noel, of Washington, D. C., for plaintiff.

Fred K. Dyar, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (McClure Kelley, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, GREEN, GRAHAM, and LITTLETON, Judges.

WILLIAMS, Judge. Plaintiff sues to recover taxes paid for the years 1922, 1923, 1924, 1925, and the first five months of 1926, on the initiation fees and dues of its members. The taxes were collected under the provisions of section 801 of the Revenue Act of 1921 (42 Stat. 291) and section 501 of the

Revenue Acts of 1924 and 1926 (43 Stat. 321, 44 Stat. 92).

Section 801 of the Revenue Act of 1921, 42 Stat. 291, reads:

"That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

Section 501 of the Revenue Acts of 1924 and 1926 is substantially the same as the section above quoted of the act of 1921.

The defendant offered no testimony necessitating a consideration of the case on the evidence adduced on behalf of the plaintiff.

The sole issue presented is whether the plaintiff club was properly classified by the Commissioner of Internal Revenue as a social club within the meaning of the acts under which the taxes were imposed.

Article 5 of Treasury Regulations promulgated for the administration of the revenue acts imposing the taxes in question reads:

"Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization,' within the meaning of the act, unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business."

134

In the Aldine Club v. United States, 65 Ct. Cl. 315, the court said:

"And though there may be social features incident to its general activities, yet if the social feature is a subordinate and merely incidental feature to the 'predominant' purpose of the organization, it is not a social club. This must be true unless all clubs where people congregate are social clubs, 'because practically all clubs may be said to have a feature of the social, using the term as having to do with human intercourse.'"

The purposes of the Washington Club as stated in its charter are:

"The establishment, maintenance, and management of a club for literary purposes, mutual improvement, and the promotion of social intercourse."

The membership of the club is limited to ladies and now numbers about 600. The club owns its own quarters, an old but substantial building, formerly a residence, located at the intersection of Seventeenth and K Streets N. W., in Washington. It is comfortably but not luxuriously furnished.

The club does not maintain a restaurant and does not regularly serve meals to its members. Breakfasts, luncheons, etc., can usually be had if ordered in advance, but they are not a regular feature of the club's activities, and when such are furnished it is solely with a view of obtaining revenue, and not "for the purpose of affording members an opportunity of congregating for social intercourse."

The main activities of the club center in the library and its use by members and in the regular Tuesday morning lectures.

The library consists of about 6,000 volumes. It is carefully selected and contains standard works on practically every subject. It is patronized by members engaged in research work as well as by those who seek improvement in the general study and reading of books and magazines.

The outstanding feature of the club's activities is the regular Tuesday morning lecture. These lectures are largely attended and have given the club a wide reputation as an educational and cultural organization. The lectures cover a wide range of subjects and have brought to the club platform many eminent men and women, recognized authorities on the subjects discussed by them. While occasionally lectures are given on popular and entertaining subjects, they are the exception, and the lectures in the main are educational in character.

In addition to the regular Tuesday morning lecture, the club each year arranges a series of lectures, about 22 in number, on current events. In these lectures current topics of national and international interest and importance are discussed. These lectures are given on Friday mornings and are frequently repeated in the afternoon for the benefit of members and nonmembers who are not able to attend the morning lecture.

Announcement of these lectures is made in the schools of the District and many teachers avail themselves of the opportunity to attend. The evidence shows these lectures are very popular, are largely attended, and have been of great educational value.

Another activity of the club is the foreign-language classes which it sponsors. Lessons are given in French, Italian, and Spanish. These classes are open to nonmembers as well as the members, a fee being charged each person to pay the teachers and defray expenses.

Competent teachers, foreign born as a rule, are employed, and classes are maintained both for beginners and for students more advanced. Conversational and grammar practice courses are maintained. A French tea is given each year by the classes studying the French language, and a play is put on where French is exclusively spoken. The foreign-language classes have proven a very popular activity of the club, and many people, club members and others, have availed themselves of the opportunity offered to gain a knowledge of one or more foreign language.

It is true the Washington Club has certain social features, such as its annual New Year's reception to members and guests, and the tea dances which its members give for their sons and daughters during the Christmas and Easter holidays, but these social features are clearly incidental and subordinate to the predominant purposes of the club.

This being true, the plaintiff club is not a social club within the meaning of section 801 of the Revenue Act of 1921 (42 Stat. 291) and section 501 of the Revenue Acts of 1924 and 1926 (43 Stat. 321, 44 Stat. 92). Aldine Club v. United States, 65 Ct. Cl. 315; Chemists' Club v. United States, 64 Ct. Cl. 156; Bankers' Club of America v. United States, No. K–145, 37 F. (2d) 982, decided to-day.

Plaintiff is entitled to judgment against the defendant for the amount claimed in its petition, with interest thereon as provided by law. It is so ordered.

BOOTH, Chief Justice, and GREEN and GRAHAM, Judges, concur.

LITTLETON, Judge, dissents.