## TIDWELL v. ANDERSON.

District Court, S. D. New York.
June 5, 1933.

.Greene & Hurd, of New York City, for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Ira Koenig, Asst. U. S. Atty., of New York City, of counsel), for defendant.

CAFFEY, District Judge.

The ultimate facts which I deem pertinent —applicable throughout the period under consideration, but for convenience (unless otherwise indicated) recited in the present tense—are as follows:

1. The club has the physical equipment of the ordinary social club.

2. The university owns the land and constructed the clubhouse.

3. Except that house charges are paid by the individuals who incur them and the club cares for repairs inside the building, the entire expense of maintaining the property (including upkeep, external repairs, light, and heat) is borne by the university.

4. The membership of the club is almost wholly restricted to the officers and teaching staff of the university.

5. The membership is made up completely of such officers and staff, save for a negligible few whose work so much affects or is so closely allied to the affairs of the university that it is desirable, from the standpoint of the university itself, that its officers and staff have ready access to or association with them.

6. The controlling purposes and the controlling activities of the club are exclusively

790

in furtherance of the educational work of the university.

7. The club has no activities outside the clubhouse, and except to the extent essential to render the clubhouse sufficiently comfortable and attractive to promote the assembly there of the administrative and teaching personnel of the university, who are engaged in the conduct of the university as a seat of learning, the club has no activities whatever.

8. Sleeping accommodations are meager, consisting only of a room for the steward and a suite reserved for guests of the university, but rarely used at all.

9. The principal meal is luncheon, when it is customary for groups from a single department of the university or professionally occupied on a single subject to sit at the same tables, so as there to discuss or dispose of university matters of mutual concern.

10. The service of meals, the provision of space for games of kinds prevalent among professional men while relaxing and the arrangement of occasional, but infrequent, entertainments for members—sometimes accompanied by their wives or children—are confined to what may be reasonably estimated as needed in order to induce the members to gather at the clubhouse, so as thereby to assist in the efficient discharge of strictly university functions.

11. The social purposes of the club are merely incidental to the accomplishment of the university's own purposes.

12. In design, as well as in practice, the club is but an integral part of the organization of the university as an educational institution.

■ Upon the facts, as I have stated them, if the statute (26 USCA § 872) stood alone, I should be inclined to hold that the club is "social." Article 36 of regulations prescribed for the enforcement of the statute, however, contains a definition of the type of club which, within the terms of the statute, is "social." The courts lean strongly to the interpretation put on a statute by executive officials charged with its administration, particularly when, as here, the interpretation has prevailed for some years. Accordingly, I shall accept the view of the Treasury Department, as set out in the regulation cited, of what is a social club. Under the regulation, as I see it, the issue in the present case turns on the phrase "a material purpose" employed in the regulation. What it means is not altogether free from doubt.

■ Counsel agree that the club is not entitled to recover unless it be within the exempting clause of the regulation. So, also, both say that the exempting clause embodies two characteristics, which must inhere to a club, if it is to escape taxation on its dues. One of these is negative; the other is positive. It must appear that the social features (1) "are not a material purpose of the organization" and (2) "are subordinate and merely incidental to the active furtherance of a different and predominant purpose."

On the proof it seems to me manifest that the social features of the club now involved are quite subordinate and are purely incidental to the objects for which the university created and supports it; to what the club exists for, as well as to what it actually does. In other words, its chief and ascendant objectives are not social. If that be so, then necessarily we must pass to a sole further inquiry, namely, whether social features constitute "a material purpose of the organization." It is out of this inquiry alone, as I see it, that any uncertainty can arise.

I think it cannot be gainsaid that the intention is that the club members engage, as they actually do engage, in social intercourse in the clubhouse. The facilities are obviously appropriate to social enjoyment. Yet it is equally well established by the testimony that the means for social enjoyment are afforded so as to increase attendance at the clubhouse of those the university wants to have come together there. In a sense plainly the club has social features. That fact, however, is not enough, within the regulation, to subject the dues to taxation.

I take it as incontrovertible that the regulation permits some social features in a club without its dues being taxable. The question apparently is one of degree. Unless the mere possession of social features were, in and of itself, insufficient to subject a club to taxation, the provision of the regulation relieving from the tax if the "social features are not a material purpose of the organization" would be without rational, much less a natural, field of operation. The very structure of this portion of the sentence recognizes the right of a club to social features without rendering itself taxable on its dues. It is a prerequisite that these features be "a material purpose of the organization."

Construing the regulation as best I can, it strikes me that while in form it may be said to embrace two elements, nevertheless these are conjoined or interrelated. One assists in

finding the significance of the other. Within the phraseology of the regulation if social features be "subordinate and merely incidental" to the real and primary pursuit of something other than social features—i. e., if there be "active furtherance" of something "different" from "social features" and if that different thing be the "predominant purpose" of the organization—then the "social features" are not "a material purpose." While the social features may be a purpose, at least that purpose cannot be treated as "material" if it be but an unsubstantial portion of the whole set of purposes for which the club is set up and carried on. Unless the regulation were interpreted in this way, as I conceive it, the language could not be harmonized. If it had been the intention to express something else, then the word "material" in the description of the purpose of the club's "social features" in the first part of the exception clause ought to have been omitted. It was brought in so as to draw a line of demarcation. The very task was to fix a line. The line, as it exists, seems to me to be this: If the social features be "subordinate and merely incidental to the active furtherance of a different and predominant purpose," then those social features as a purpose are not "material."

The relevant court decisions are numerous. Out of them, so far as I can determine, no clear uniformly governing principle has emerged. The only thing I discover, on which there is accord, is that every case stands by itself and raises an issue of fact. As nearly definite a test as I have found was laid down by the Court of Claims in Army and Navy Club of America v. United States, 53 F.(2d) 277, 282. It was there said that: "If the predominant purpose of the organization is not social, and its social activities are merely incidental to the furtherance of this different and predominant purpose, then the club is not a social one within the meaning of the law." Compare Washington Club v. United States (Ct. Cl.) 38 F.(2d) 130; Cosmos Club v. United States (Ct. Cl.) 42 F.(2d) 321; The Cordon v. United States (Ct. Cl.) 46 F.(2d) 719; Houston Club v. United States (Ct. Cl.) 58 F.(2d) 487; Builders' Club of Chicago v. United States (Ct. Cl.) 58 F.(2d) 503.

While frankness compels the admission that I do not feel sure what the regulation means, I do feel that the weight of argument favors the conclusion I have reached.

Accordingly, a verdict will be directed for the plaintiff in the sum of $3,711.30, with interest.