OPINION. Murdock, Judge: The petitioner claims exemption from tax under section 101 (9) of the Internal Revenue Code. That section provides that “Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private stockholder” shall be exempt from taxation under chapter 1. The income tax is imposed by chapter 1, but the declared value excess profits and the excess profits tax are imposed by chapter 2.. Section 727 (a) provides that corporations exempt under section 101 from the tax imposed by chapter 1 shall be exempt from tax imposed by subchapter E — excess profits tax. The declared value excess profits tax is imposed under subchapter B of chapter 2. Section 600 provides that, if any corporation is taxable under section 1200, a declared value excess profits tax shall be imposed. Section 603 provides that all provisions of law applicable in respect of taxes imposed by chapter 1 shall, in so far as not inconsistent with subchapter B, be applicable in respect of the declared value excess profits tax. The petitioner does not contest the additions to the tax for delinquency in filing returns except by its single contention that it was wholly exempt from tax for all three years. The petitioner, up to the close of 1941, was a club organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inured to the benefit of any private stockholder. It operated a dining room and buffet, as had been intended from the first. Those facilities were operated for the convenience and pleasure of its members. Their use by guests of members was not extensive and the club was not operated for their benefit. Small profits were realized but they were realized principally from the use of the club by the members themselves, and only incidentally, if at all, from the use of the club by guests of members. The club needed funds from some source to pay for the facilities which it was acquiring or hoped to acquire. It would seem to be immaterial whether a club, needing to acquire facilities, obtained the necessary funds by charging its members dues, initiation fees, or assessments, or whether it obtained them in whole or in part by charging the members somewhat more for services than the cost to the club of furnishing the services. A club may engage in business to the extent necessary to maintain a clubhouse, including a dining room and a bar, for the benefit of its members, so long as its business activity is incidental to its main purpose. Cf. Anderson Country Club, 2 T. C. 1238. No decided case holding that such operations would prevent a club of this kind from being exempt from tax has come to our attention. The operations were changed materially in 1942 and there was a further increase in the degree of change in 1943. The club was not operated exclusively for the pleasure and recreation of its members during those two periods. The pleasure and recreation of its members were subordinated, in the operation of the club during those'years, to the operation of the club for other purposes, to wit, for the entertainment of transient officers in the armed forces of the United States, who were in no true sense members of the club. They were nonmembers, as the petitioner recognizes in its argument. They came into the club in such numbers that the real members of the club were deprived of the use of the club to a very substantial extent, as has been indicated in the findings of fact. The use of the club by these nonmembers was not a mere incident of the original purpose for which the club was organized. The profits which the club made from the use of the club and its facilities by these nonmembers were extremely large in proportion to what it had made previously. Its net income for 1942 was more than 7 times what it was in 1941 and its net income for 1943 was almost 25 times its net income for 1941. Of course, the club was not in operation during all of 1941. It is apparent from the figures in evidence that most of the profits which the petitioner made in 1942 and 1943 were made from the nonmember officers of the armed forces of the United States to whom guest cards were issued. The petitioner recognizes this fact in its briefs. If it appeared that the use of the club by nonmembers and the profits made from that use were merely incidental to the main purpose for which the club was operated during those years, the petitioner might not lose its exempt status. But the profits just mentioned in serving nonmembers were not incidental to the operation of a club exclusively for the pleasure, recreation, and other nonprofitable purposes of the members of the club. “Incidental” in this connection means subordinate to the general purpose, a minor occurrence, something coming casually as a result or an adjunct of some more important purpose, something aside from the main design, something happening without regularity or design. The above is not intended as an all-inclusive or exclusive definition, but it serves to demonstrate that the profits here in question were not incidental to the operation of this club exclusively for the pleasure, recreation, and other nonprofitable purposes of its members. Cf. Trinidad v. Sagrada Orden de Predicadores, 263 U. S. 578. The petitioner had no stockholders, but its regular members may be regarded as “stockholders” within the meaning of that term as used in section 101 (9). West Side Tennis Club, 39 B. T. A. 149; affd., 111 Fed. (2d) 6; certiorari denied, 311 U. S. 674. The petitioner makes no argument to the contrary. The earnings of 1942 and 1943 amounted to more than $90,000. Those earnings inured to the benefit of the members of the club in that they were used to pay off or were available to pay off the indebtedness of the club and were used or available for use in enlarging and improving the club facilities which the members would thereafter enjoy at no cost to themselves. The phrase “inures to the benefit of” covers a situation where the profits are available to be used or are used for the benefit of a person. They need not be actually distributed to the persons who are to be benefited. The profits of 1942 and 1943 were not the result of an isolated transaction, but were the result of a course of conduct continued over several years. The conclusion that the accumulation of these profits was deliberate on the part of the petitioner can not be avoided. It is not determinative that a spirit of patriotism prompted the club to initiate this new use of its clubhouse and facilities. Patriotic motives prompted it to issue the guest cards to these transient officers, but the profits could easily have been avoided by charging no more for the services than it cost the petitioner to furnish those services. Jensen was in this business to make money. The contract which he had with the petitioner provided that the profits should be shared between the two in certain percentages. His profits increased along with those of the petitioner. He was, of course, interested in making those profits. He asked and obtained permission from the petitioner to increase prices during the period here in question and apparently he did increase the prices. Monthly reports were rendered to the petitioner and it was fully aware of what was going on. It can not successfully contend, under such circumstances, that it did not intend to realize the profits which it actually realized during the period in question. A substantial and profitable business was thus conducted during these years which had only an indirect relation to the original purpose for which the club was created. A profitable business of that kind, with nonmembers, tacked onto a club, providing it with a larger or more luxurious plant for the benefit of its members without the payment of burdensome dues or other charges by them, destroys its exempt status. West Side Tennis Club, supra; Jockey Club, 30 B. T. A. 670; affd., 76 Fed. (2d) 597. Cf. Berkeley Hall School, Inc., 31 B. T. A. 1116; affd., 84 Fed. (2d) 539; Northwestern Jobbers’ Credit Bureau, 14 B. T. A. 362; affd., 37 Fed. (2d) 880; Underwriters’ Laboratories, Inc., 46 B. T. A. 464; affd., 135 Fed. (2d) 371; certiorari denied, 320 U. S. 756. Decision will be entered for the petitioner as to 1941. Decision will be entered for the respondent as to 1942 and 194