## CALIFORNIA STATE AUTOMOBILE ASS'N v. SMYTH.
### No. 26017.

District Court, N. D. California, S. D.

Feb. 26, 1948.

Arthur H. Deibert, of Los Angeles, Cal., and George E. Sanford, of San Francisco, Cal., for plaintiff.

132

Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

LEMMON, District Judge.

Plaintiff is a non-profit, non-stock corporation, organized in the year 1907 under the laws of the State of California. This action is brought to recover income and excess profit taxes, plus interest to the date of payment, assessed for the years 1943 and 1944, and interest on the aggregate amounts from the dates of the alleged overpayments.

The tax returns and the consequent payment of taxes for these years were made as the result of a demand by the Commissioner of Internal Revenue. The plaintiff had, prior to the years in question, been exempt from the payment of income and excess profit taxes.

The membership of the plaintiff corporation is largely made up of owners of pleasure cars. There is rendered to the members towing service, emergency road service, touring bureau service and service on the procuring of motor licenses. Plaintiff has rendered service to the public generally through road signing and various war services in connection with the problems arising during the gas rationing period, acting as an official agency for the Federal Government in signing of highways in dim-out and black-out areas, and in rendering to members of the armed forces its services without cost. The taxpayer publishes a monthly magazine known as the "Motor Land." During the years in question it had no income from advertising. The magazine was distributed to the entire membership and was not sold generally to the public. The emergency road service afforded the members is rendered under contracts which plaintiff makes with garages. This service is restricted to passenger cars. The garage bills are paid for by the members who receive the service but plaintiff makes no charge to the members for towing service. If a member is involved in an accident, plaintiff undertakes to adjust the matter of damages, and, if the member is involved in an arrest in a remote place, counsel is provided by the association; if a fine is assessed the fine is paid by the plaintiff and the member is called upon

to reimburse plaintiff for such outlay. The legal service which is rendered is furnished pursuant to an agreement made by the plaintiff and the State Bar of California. Plaintiff gives to its members a special limited traffic accident policy written by the North American Accident Insurance Company. The California State Automobile Inter-Insurance Bureau affords insurance service to certain of plaintiff's members. The bureau is a separate corporate entity. It is a reciprocal insurance exchange for the inter-exchange of insurance on a cooperative basis. No one can be so insured unless he is a member of the plaintiff association. The insurance is restricted to certain individuals who meet certain qualifications. There is no requirement that a member of the plaintiff association become a subscriber to the bureau. The bureau writes participating insurance. The plaintiff and the bureau occupy the same office quarters in San Francisco and in each of thirty-five district offices. The bureau compensates the plaintiff for the space it occupies, the rental being calculated on a square foot basis. Other expenses, including personnel costs, are divided upon the basis of proper percentage of costs that should be borne by each organization and no profit was derived by plaintiff through its relationship with the bureau. Dues for the years in question were $12 per year, plus an initiation fee for $3 for the first year. Membership is open to all owners of automobiles who are not considered too old and who are deemed to be persons without a bad traffic record or otherwise irresponsible. No social, racial or religious discrimination is made wth reference to membershp. It has been the policy of plaintiff to expend its annual income for services but during the years 1943 and 1944 for reasons readily apparent its services were restricted and curtailed. No dividends have been declared by plaintiff to its members and its income has never been paid or credited on its books to any of its members. The directors of the association serve without financial remuneration. The members have the right to participate in the affairs of the plaintiff, including their presence at the annual board meetings, notices of which are sent out at least 60 days prior to the meeting. Although plaintiff has no

member clubs it is affiliated with the American Automobile Association and under that affiliation plaintiff recognizes the membership of such other clubs affiliated with that association when such members are visiting plaintiff's territory and such visitors are entitled to many of the services above enumerated. Outside of the annual meeting, the meetings of the Board of Directors and other meetings occasionally called by plaintiff and its committees (which the members are entitled to attend), plaintiff does not have any social features. There are other activities such as safety education work, the distribution of safety posters and the sponsoring of school safety patrols, the making of traffic surveys and participation in activities relating to vehicle legislation, in which the plaintiff engages. Plaintiff's records show that on December 31, 1937, there was a slight excess of receipts over expenditures but that during each of the years 1938, 1939, and 1940 there was a deficiency; that during the next 5 years the income exceeded the expenses and this resulted in surplus balances for each of these years. In 1946 the expenditures exceeded the income. A check of 16 years shows a surplus for 8 years and a deficiency for 8 years.

This abridged recital of the purposes and activities of plaintiff corporation is sufficient as a basis for approaching the problem which is to be solved, whether plaintiff comes within the exemption which excludes from the tax organizations falling within Section 101(9) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 101(9), which reads as follows:

"Clubs organized and operated exclusively for pleasure, recreation, and other non-profitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder."

This section poses three questions. 1. Is the plaintiff a club? 2. Is plaintiff organized and operated exclusively for pleasure, recreation and other non-profitable purposes? 3. Do any of its net earnings inure to the benefit of any of its members?

The New International Encyclopedia defines "club" as "A word said to be derived from the Saxon cleafan to divide—a club being an association the expenses of which

are shared among its members". It "indicates a division of the reckoning", Merion Cricket Club v. United States, 3 Cir., 119 F. 2d 578, 579, "a definite association organized for indefinite existence; not an ephemeral meeting for a particular occasion to be lost in a crowd at its dissolution", Eichbaum v. Irons, 6 Watts & S., Pa., 67, 40 Am.Dec. 540. Plaintiff is an association the expenses of which are shared among its members. Equivalence between the proportion of a member's contributions and the benefits which he enjoys is of no moment as long as there is payment by him for the repeated use of its facilities, available to the members. The services provided by plaintiff to its members are for their pleasure and recreation, to enjoy to the extent the wants or fancies of the individual member require.

Defendant contends that in order to constitute a club the purposes and activities must embrace a commingling of the members, one with the other, in fellowship; that it is not sufficient that the members make a common cause in a financial or other sense or that there be present group activity, both of which conditions are here found. United States v. Anderson, 7 Cir., 108 F.2d 475, and Arner v. Rogan, D.C., 27 A.F.T.R. 1092, 1093, cases in which the application of the exise tax under Section 501 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 274, on "any amount paid * * * as dues or membership fees to any social, athletic, or sporting club or organization" are advanced by defendant in support of its position. This section imposes an exise tax upon membership fees or dues while section 101(9) exempts from income tax associations coming within the description. In considering the two statutes there is wanting identity in objectives. There is differentiation also in the terms used. A "social club" has a meaning different from a club "organized and operated exclusively for pleasure or recreation purposes". Webster defines the adjective "social" as "That is spent, taken, enjoyed, etc., in the company of one's friends or equals; as agreeable social relations". To be classed as a social club under the taxing statute the predominate purpose of the taxpayer must be social. Tidwell v. Anderson,

D.C., 4 F.Supp. 789. If it has some social activities this alone does not make it a social club and it is not such if the social features are merely incidental to main purposes which are of a nature other than social, Bankers' Club of America v. United States, 37 F.2d 982, 69 Ct.Cl. 121, or at least the social features must be a material part, Merchants Club v. United States, Ct. Cl., 66 F.Supp. 126. The generic term "club" is used in both statutes; this alone is common to the two. The adjective "social" qualifies the noun "club" and limits it to such organization as are "social" as above defined. It appears clear that a club operated for pleasure or recreation is one in which the members may carry out or enjoy those purposes acting either individually or collectively. It would require a strained and unwarranted construction to read into the description the qualification of "social". Had Congress so intended, such intention could readily have been expressed by supplying the adjective "social" as it did in section 501.

Is plaintiff organized and operated exclusively for pleasure, recreation and other non-profitable purposes?

■ The Collector says that if there exists a single purpose which is neither pleasure, recreation or non-profitable, plaintiff may not be said to come within the exemption, and that this follows regardless of the number and importance of the purposes falling within the designated purposes. Better Business Bureau v. United States, 326 U.S. 279, 66 S.Ct. 112, 90 L.Ed. 67, cited in support, would apply (as that case limits itself), only if the other purposes are "substantial in nature". This theme is in Treasury Regulation 111 which deals with Section 101(9), "Generally, an incidental sale of property will not deprive the club of the exemption". If the income is applied in carrying out the non-profitable purposes the exemption applies and this results without regard to the source of the income. Scofield v. Corpus Christi Golf & Country Club, 5 Cir., 127 F.2d 452. This is the line in the cases cited which bear upon the subject. But, it is replied, towing automobiles to garages, making emergency repairs, adjusting claims, pleading in traffic violation cases and payment of fines, supplying acci-

dent policies, renewing licenses and attending to the details of transfer of title to automobiles, services afforded through contracts with garages, lawyers, and insurance companies, do not come within the restricted meaning of "pleasure" and "recreation". But the sum of the picture must be appraised. All of this was designed primarily to alleviate the hardships and inconveniences which sometimes arise in pleasure driving. It is reasonable to conclude that these services are within the listed purposes. During the years in question gasoline rationing was in effect. The basic "A" Book entitled a holder to gasoline which permitted him to drive his automobile about ninety miles per month. This, it is assumed, was used in obtaining the necessities of life for himself and family. Supplemental ration was required to be used for essential occupational purposes. Defendant Collector concludes that it is questionable whether any material part of plaintiff's activity during these years had to do with the pleasure or recreation of its members. Plaintiff replies that the income, other than from membership dues and fees and reimbursements of charges advanced for the account of members, are insignificant in amount and not "substantial"; that the excess of income over expenditures were not profits and that no activities were conducted with third parties with the purpose of creating profits. I agree with plaintiff. The largest item of expenditure appears to be for the maintenance and operation of thirty-four branch offices maintained by plaintiff for the purpose of affording the members the services outlined. Included therein is reimbursement by the Bureau, computed on a cost basis. The next largest item of expenditure covers the emergency road service. No element of profit enters into that service. The other items of expenditures relate to services rendered the members and do not embrace financial profit. The argument is not persuasive that because the income exceeded the expenditures in each of these two years the purposes are non-profitable. It is explained in the evidence that this net income resulted from a curtailment of services during war conditions due to restrictions in pleasure driving. It has never been the intent of the plaintiff to build up a sur-

plus, or to gain a profit, for itself or its members. The record discloses that the excess of membership dues and fees over expenditures in these years is offset by the cost of services to members in other years. The purpose of profit is not discoverable in the facts. The distinction is in the purpose. Or as the Supreme Court stated in Trinidad v. Sagrada, 263 U.S. 578, 44 S.Ct. 204, 205, 68 L.Ed. 458, dealing with a similar exemption, "says nothing about the source of the income, but makes the destination the ultimate test of exemption."

Though the services may have been rendered to many members who availed themselves thereof in their businesses rather than for pleasure or recreation this would not require the conclusion that the purposes are not within the exemption. The main objective is not financial gain to members but the rendering to them services which lend to their convenience in non-business activities. Membership in most organizations which are characteristicly non-profitable has some element of commercialism. Since plaintiff's objectives translated into its activities are essentially non-profitable in a commercial sense, either to itself or to its members, it would appear that plaintiff is engaged in a non-profitable undertaking.

■ There is here not present the conducting of a "substantial and profitable business * * * which had only an indirect relation to the original purpose for which it was created", as was apparent in Aviation Club of Utah v. Commissioner, 7 T.C. 377, affirmed in Circuit Court of Appeals, 10 Cir., 162 F.2d 984, 986, where the profits were derived from outside sources, "wholly disproportionate to its non-taxable purposes." The same differentiation must be kept in mind when considering such cases as West Side Tennis Club v. Commissioner of Internal Revenue, 2 Cir., 111 F.2d 6, 130 A.L.R. 103, where more than one-half of the club's income came from sales to the public of tickets to its tennis matches, or Jockey Club v. Helvering, 2 Cir., 76 F. 2d 597, 598, where the income from transactions with outsiders was more than their cost to the club.

Finally, answer must be given to the claim that during these years 1943 and 1944 there accrued net earnings which inured to the benefit of the members. The members of the plaintiff corporations would be entitled to a pro-rate distribution of its assets upon dissolution and a member is to be considered a "private shareholder". West Side Tennis Club v. Commissioner, 39 B.T. A. 149. As above noted it has never been the intention to distribute any net income direct to the members. There, of course, exists an indirect benefit through the disbursement in subsequent years of the surplus which is accumulated in any one year, thus increasing the services in such later years. But the purposes are not thereby changed. Had the savings resulted in reducing the dues, or liability therefor, this would not mean that they inure to the benefit of the members within the ambit of the statute, if the earnings are used to further the purposes which are made the basis of the exemption. Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616. The Supreme Court in Trinidad v. Sagrada, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, construed an exemption of similar import and stated that the activities of the taxpayer could not be carried on without money and that making its properties productive to the end that the income is used for its purposes does not alter or enlarge those purposes. As noted, it is not the source but the destination of the income that governs. Scofield v. Corpus Christi Golf & Country Club, supra. At least this is so, unless the profits are wholly disproportionate to its non-taxable purposes, Aviation Club of Utah v. Commissioner of Internal Revenue, 10 Cir., 162 F.2d 984, or derived from the public, West Side Tennis Club v. Commissioner of Internal Revenue, 2 Cir., 111 F.2d 6, 130 A.L.R. 103.

■ It is my conclusion that plaintiff meets the conditions which entitled it to exemption. Findings will be prepared and submitted pursuant to the local rule.