*Decision will be entered under Rule 50.*

CHATTANOOGA AUTOMOBILE CLUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15138. Promulgated June 8, 1949.

*John Ross Scott, an officer,* for the petitioner.
*S. Earl Heilman, Esq.,* for the respondent.

969

### OPINION.

Murdock, *Judge*: The Commissioner has provided in his regulations for many years that an organization will not be deemed exempt if it engages in traffic for profit, Regulations 33, article 72, to Regulations 111, section 29.101(9)–1, although a profit from an activity merely incidental to its primary purpose may not render it subject to tax. This petitioner has gone beyond its original purpose as set forth in its bylaws. It was not operated during the taxable year "exclusively for pleasure, recreation, and other nonprofitable purposes." Sec. 101(9), I. R. C.[1] Its principal activity was the rendering of services of a commercial nature to members at a lower cost than they would have to pay elsewhere. It thereby competed with others rendering similar services as a regular business for profit. Apparently it paid commissions to persons acting as its salesmen to induce motorists to join. The commercial services included furnishing bail bonds, accident insurance, lock and key service, notarial service, towing, and emergency road service. Some of these were fully paid for by the annual dues, while the dues paid for part only of the others. These were not merely incidental to some other transcending purpose of the petitioner. The petitioner was definitely engaged in business of a kind generally carried on for profit. It had some profits from that business and its members profited by receiving the service cheaper than they could have obtained it elsewhere. Such an organization is not exempt from tax under section 101(9). We respectfully disagree with the holding of the court in *California State Automobile Association* v. *Smyth*, 77 Fed. Supp. 131.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

Harlan, *J.*, dissenting: I am unable to support the majority opinion herein for the reason that it is based on the premise that the petitioner is deriving income from selling services in competition with others, whereas the findings of fact, and especially the tabulation of receipts

---

[1] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this chapter—

*   *   *   *   *   *   *

(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder;

*   *   *   *   *   *   *   *

and expenditures, show that the major activities of petitioner are confined to acting purely as a purchasing agent for its members. Also, the findings of fact fail to show that any part of the net earnings of the petitioner "inures to the benefit of any private shareholder."

Petitioner was not operating an insurance company; neither was it receiving any commissions for the policies which it purchased and delivered to its members. The commissions paid to increase its membership were also for the benefit of its existing members, as the increase in membership furnished a greater base for the division of expenses. The money which it paid to the American Automobile Association purchased for its members the right to apply to other automobile clubs throughout the United States for travel information, maps, and other services. The money paid out for road service purchased for its members the right to be towed to a garage in the event of automobile failure. Not one of the above services was sold by the petitioner, nor did it receive any profit or income from the transaction. The rest of the activities of the petitioner were gratuitous services rendered to the public at large, as well as to its own members.

I am unable to find any basis in the findings of fact for the statement in the majority opinion: "The petitioner was definitely engaged in business of a kind generally carried on for profit."

The mere receipt by a corporation of income does not imply that such income is taxable. *Eisner* v. *Macomber*, 252 U. S. 189.

In a recent case decided by this Court, *National Leather & Shoe Finders Association*, 9 T. C. 121, involving section 101 (7) of the Internal Revenue Code, exempting business leagues from taxation, which is worded similarly to section 101 (9) pertaining to clubs, this Court exempted the taxpayer therein and in the findings of fact commented as follows:

Petitioner made no special charges above dues to its members for these various services which it rendered. The services were available to all its members alike and were incidental to and in furtherance of its main purpose to promote the welfare of the industry as a whole.

The majority opinion herein fails to show the manner in which petitioner's "net earnings" (if any) inured to the benefit of any of petitioner's members. Certainly the amount of the dues which petitioner expended in making purchases on behalf of its members did not inure to the benefit of the members except in the sense that all purchases at reduced prices usually benefit the purchaser. To tax such benefit, either to the agent making the purchase or to the individual himself, is tantamount to imposing a sales tax on the purchases so made.

The very use of the word "club" in the statute and the use of the word "club" in the title of petitioner is a strong indication as to the intent of the statutor exemption and the purpose of petitioner's

organization. Petitioner is not a social club in the sense that it holds social gatherings. Therefore the word "club" must have a different connotation. Murray's Oxford English Dictionary furnishes a definition of such a club as follows: "An association formed to combine the operations of persons interested in the promotion or prosecution of some object." The New International Encyclopedia describes such a club as: "An association the expenses of which are shared among its members." The University of Chicago Dictionary of American English defines the verb "to club together" as "to combine resources."

Petitioner is primarily an agent for such a group who have combined their resources to obtain services at less cost than when acting individually. I have found nothing in the revenue code imposing a tax on such savings, nor are any precedents available to support the majority conclusion that they are "profits" to the purchasing agent. In fact, the regulations of the Commissioner from the very beginning of income taxation in 1913 up to Regulations 77, article 530, in 1932, read substantially as follows: "The exemption granted * * * applies to practically all social and recreation clubs which are supported by membership fees, dues and assessments."

Recently, however, General Counsel Memorandum 23688, 1943 C. B. 283, was promulgated, and therein the General Counsel ruled differently concerning an automobile "association." The proceeding at bar is an attempt to support this memorandum on the apparent assumption that it applies to local automobile "clubs." While the activities of local automobile clubs have changed somewhat in detail with the growth in automobile traffic, the purposes of those activities have remained constant. The revenue code has also remained unchanged on the subject of social clubs. One might suspect, therefore, that the inducement for the Commissioner's 1943 reversal in tax policy on the question of automobile clubs rested in the greatly increased volume of automobile club dues. An attempt to procure tax revenue from this source is doubtless commendable, but the question involved would seem to be a matter of governmental policy, to be handled by Congress rather than one to be accomplished by the judicial imposition of a camouflaged sales tax.

OPPER, *J.*, agrees with this dissent.

LeMIRE, *J.*, dissenting: The petitioner is one of a vast number of automobile clubs, affiliates of the American Automobile Association and other similar nation-wide organizations, which have long been considered exempt from Federal income taxes.

The facts as found in the majority report show that the petitioner conformed, in its organization and operations, to the common pattern

of such automobile clubs. It is a nonprofit organization, in the sense that it is not engaged in any income-producing activity and has no source of income except its membership fees. Its principal activity is rendering services to its members.

The exemption claimed by the petitioner is based upon section 101 (9), Internal Revenue Code. This section provides that:

The following organizations shall be exempt from taxation under this chapter—

*       *       *       *       *       *       *

(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

Granting that the petitioner may not have been organized and operated exclusively for "pleasure" or "recreation," we must still inquire whether it was for "other nonprofitable purposes" and whether it had net earnings which inured to the benefit of any private shareholder. As pointed out, it had no net profits, in the sense of gains from business, and no shareholders. Even upon dissolution, its charter provides, its assets can not be distributed to its members, but must be transferred to some other nonprofit organization.

Substantially the same provisions as those contained in section 101 (9), above, have appeared in every revenue act since the Act of 1913. Section 11 (a) Ninth of the 1916 Act, for instance, exempted any "Club organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net income of which inures to the benefit of any private stockholder or member." From its inception, the Commissioner construed the section as granting exemption to automobile clubs such as the petitioner. It was not until 1943 that he reversed his position, ruling in G. C. M. 23688, 1943 C. B. 283, that an association functioning as a federation of automobile clubs was not a club within the meaning of section 101 (9), Internal Revenue Code, and was not organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes within the meaning of that section.

The Commissioner's regulations under the various revenue acts have not been very definite as to what types of clubs are exempt under the statute. Article 72 of Regulations 33, promulgated under the Revenue Act of 1916, provided as follows:

ART. 72. *Social clubs.*—Social clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes are exempt from the tax, provided no part of any net income which they receive inures to the benefit of any private stockholder or individual. This exemption will reach practically all social and recreation clubs which are supported by membership fees, dues, and assessments.

If a club, by reason of the comprehensive powers granted in its charter, engages in traffic, in agriculture, or horticulture, in the sale of real estate, timber, etc.,

for profit, it will be held that such club is not organized and operated exclusively for pleasure, recreation, or social purposes. It thus becomes a business or commercial enterprise, and any profit realized from such activities is subject to the tax imposed by this title, and the club so operated must make returns of annual net income.

A slight change was made in Regulations 45 (Revenue Act of 1918). Article 520 of those regulations provides as follows:

ART. 520. *Social clubs.*—The exemption applies to practically all social and recreation clubs which are supported by membership fees, dues and assessments. If a club, by reason of the comprehensive powers granted in its charter, engages in traffic, in agriculture or horticulture, or in the sale of real estate, timber, etc., for profit, such club is not organized and operated exclusively for pleasure, recreation or social purposes, and any profit realized from such activities is subject to tax.

The provisions of Regulations 45 were carried forward in article 520 of Regulations 65 (Revenue Act of 1924) and Regulations 69 (Revenue Act of 1926), and article 530 of Regulations 77 (Revenue Act of 1932).

In article 101 (9)–1 of Regulations 86 (Revenue Act of 1934) there was added the provision: "If a club, otherwise exempt, sells any of its property at a profit, it is not exempt for the taxable year for which the profit is taxable." The regulations under the 1936 Act were not changed. Article 101 (9)–1 of Regulations 101 (Revenue Act of 1938) carried the provision: "Generally, an incidental sale of property will not deprive the club of the exemption." Section 19.101 (9)–1 of Regulations 103, the first regulations to be promulgated under the Internal Revenue Code, contained the same provisions as Regulations 101, as do the current Regulations 111.

In the meantime, the Commissioner had consistently ruled, until 1943, that automobile clubs, such as the petitioner, were exempt from tax. In O. D. 643, C. B. No. 3, p. 241 (1920), the ruling was as follows:

An automobile club organized for the purpose of promoting the improvement of roads and boulevards, and other conditions and matters of benefit to automobile owners and drivers, such as sign-posting roads and securing legislation of benefit to automobile owners and drivers, its income being derived from membership fees and subscriptions, no part of which inures to the benefit of any private stockholder or individual, is organized for "nonprofitable purposes" and therefore exempt from taxation under the provisions of paragraph 9, section 231 of the Revenue Act of 1918.

To the same effect is I. T. 2106, III–2 C. B. 228 (1924), and G. C. M. 2867, VII–1 C. B. 115 (1928).

In G. C. M. 2867 it was said that:

It will be noted that the exemption granted under the above-quoted section is not limited to organizations whose income consists solely of dues and fees paid by members. On the contrary, the statute by necessary implication recognizes that an organization of the character contemplated may have "net earnings"

from other sources and yet be exempt, provided no part of its earnings inures to the benefit of any stockholder or member. It follows, therefore, that a club organized for pleasure, recreation, and other nonprofitable purposes may derive a profit from activities which are incidental to the primary purpose of the club, without depriving itself of exemption, provided it does not engage in those activities as a business but for the convenience only of its members. * * *

* * * The conclusion reached is that the M Automobile Club is entitled to exemption from taxation under section 231 (9) of the Revenue Act of 1918 and subsequent Revenue Acts so long as its activities and mode of operation conform to those shown by the evidence submitted.

The respondent's ruling in G. C. M. 23688, *supra*, appears to be the basis for his denial of a tax exempt status for this petitioner. That ruling reads, in part, as follows:

Under the rule of *noscitur a sociis*, the test of exemption is whether a club is organized and operated exclusively for pleasure, recreation, and other *similar* nonprofitable purposes. It appears, then, that section 101 (9) of the Code, *supra*, contemplates a club which devotes itself *exclusively* to activities in the nature of pleasure and/or recreation.

* * * * * * *

It is not believed that section 101 (9) of the Code, *supra*, was intended to exclude from Federal income taxation a club wherein the principal activity is that of rendering services of a commercial nature to members at a lower cost than would be paid elsewhere, even though the club derives no profits from such activity.

In view of the foregoing discussion and conclusions, G. C. M. 3555 * * * and G. C. M. 2867 (C. B. VII-1, 115 (1928)) are revoked, and it is recommended that O. D. 643 (C. B. 3, 241 (1920)) be revoked and that I. T. 2106 (C. B. III-2, 228 (1924)) be modified to conform to the views expressed in this opinion.

The repeated reenactment of section 101 (9) of the Internal Revenue Code, or its counterpart in the earlier revenue acts, without substantial change indicates that Congress approved the administrative construction which the Commissioner had long given it. *Helvering* v. *Winmill*, 305 U. S. 79; *Boehm* v. *Commissioner*, 326 U. S. 287; *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110.

Undoubtedly, there are many organizations like the petitioner which, in reliance upon the contemporaneous administrative construction of the statute, have adopted forms of organization and policies carefully designed to preserve their tax exempt status. I do not think that they should now be held taxable under a changed construction of the statute which is at best doubtful. The Supreme Court spoke out in strong disapproval of such a course in *Helvering* v. *Griffiths*, 318 U. S. 371, a case involving the taxability of stock dividends. The Court said:

We are asked to make a retroactive holding that for some seven years past a multitude of transactions have been taxable although there was no source of law from which the most cautious taxpayer could have learned of the liability. If he consulted the decisions of this Court, he learned that no such tax could be imposed; if he read the Delphic language of the Act in connection with exist-

ing decisions, it, too, assured him there was no intent to tax; if he followed the Congressional proceedings and debates, his understanding of nontaxability would be confirmed; if he asked the tax collector himself, he was bound by the Regulations of the Treasury to advise that no such liability existed. It would be a pity if taxpayers could not rely on this concurrent assurance from all three branches of the Government. But we are asked to brush all this aside and simply to decree that these transactions are taxable anyway.

No suggestion is found in the majority report that the Commissioner's reversal of position, with respect to the taxpayer or automobile clubs in general, results from changes in their organization or operations, rather than from a change in his construction of the statute. If this were true, it would not have been necessary for the Commissioner in G. C. M. 23688, *supra*, to revoke his earlier rulings. Moreover, the facts here are not materially different from those on which the earlier rulings were based and, as pointed out above, there has been no material change in the law. We must conclude, therefore, that in G. C. M. 23688 the Commissioner has given a new and different administrative construction to the statute.

We think that the Commissioner, by administrative ruling, should not now undertake to reverse his position of such long standing on no greater urgency than the dictates of an ancient legal maxim—*noscitur a sociis*—which applies, if at all, with no greater force now than in the prior years.

The majority opinion appears to be predicated upon the provisions of the Commissioner's regulations, Regulations 33, article 72, and Regulations 111, section 29.101 (9)-1, said to be of long standing, denying tax exemption to organizations engaged in "traffic for profit." It might be pointed out that the Commissioner's contemporaneous rulings referred to above, equally long standing, specifically remove automobile clubs, such as the petitioner, from the reach of these very regulations. Moreover, the majority does not find that the petitioner was "engaged in traffic for profit," but finds, to the contrary, that its principal activity was rendering services to its members, for which it made no charges except membership fees. These services consisted of furnishing bail bonds, accident insurance, towing and emergency road service, and others. By reason of these services it is said, in the opinion, that "the petitioner was definitely engaged in business of a kind generally carried on for profit" and that "It had some profits from that business * * *." How can it be said that the petitioner had profits from these services when it is found as a fact that "the petitioner made no charge except the membership fee for services rendered by it to its members"?

It is said, too, that petitioner "thereby competed with others rendering similar services as a regular business for profit." However,

as I understand the facts, petitioner did not itself furnish the labor or materials for these services, but merely procured them for its members. For instance, it contracted with regularly established garages and automobile service stations to do the towing. It did not itself underwrite the bail bonds or the accident insurance. It was not in the insurance or the bonding business. If the petitioner did not itself render these services, how and with whom was it competitive?

It seems to me that if, because of the expansion of their activities, or for any other reason, automobile clubs, such as the petitioner, have forfeited the right to tax exemption long accorded them, it is a matter that should be remedied by congressional action.

ARUNDELL, OPPER, and HARLAN, *JJ.*, agree with this dissent.