ALLIED TRADES CLUB, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50115. Filed March 14, 1955.

*Samuel M. Baker, Esq.*, for the petitioner.
*Phillip O. North, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income tax of $704.31 for 1950 and $1,193.11 for 1951. The only issue for decision is whether the petitioner is exempt from taxation under section 101 (9) of the Internal Revenue Code as a social club. The parties have filed a stipulation which is adopted as the findings of fact.

The petitioner was incorporated in 1933 under the laws of Pennsylvania. Its constitution and bylaws in effect during the taxable years provided, *inter alia*, that the petitioner was formed for the following purposes:

to provide a proper and respectable place for the meeting together of such members of trade unions affiliated with the American Federation of Labor who might subsequently join the same, as well as those persons who, while not being members of a trade union, might be in sympathy with the aims and objects of trade unions, and might wish to apply for membership; to promote among members of trade unions, and others, knowledge of the civic and political duties in the City of Erie; and for those purposes to have and enjoy a club for social purposes.

They limited active membership to white male citizens over 21 years of age in good standing in organizations affiliated with the American Federation of Labor. There could also be male and female associate members, but they had no vote. Initiation fees for all members were $2.50 and dues for all members were $1.20 except that for female associate members they were $1 per year.

The constitution and bylaws of the petitioner were amended in 1948 to provide for a death benefit fund. That provision of the constitution and bylaws was changed in March 1949 to the following:

## ARTICLE VI

### Death Benefit Fund

The Allied Trades Club, Inc., will pay a death benefit in case of the death of a member from any cause whatsoever, provided he has maintained continuous good standing, who at the time of his death has paid the current year's dues, according to the following schedule:

(1) No benefit shall be due and payable on account of the death of a member during the first year of membership;

(2) After one year but less than two years_____ $30.00

(3) After two years but less than three years_____ 35.00

(4) After three years but less than four years_____ 40.00

(5) After four years but less than five years_____ 45.00

(6) After five years_____ 50.00

To be eligible for the death benefit, the member must come within the definitions and descriptions of the following paragraphs (1) and (2):

(1) He must have been a member in continuous good standing for at least one year;

(2) He must not have been under twenty one nor more than fifty years of age at the time he applied for membership. (This provision shall not apply to members who were members in good standing prior to March 1, 1949)

Such benefit shall be payable to the widow or husband of the member, if living; and if deceased, to his or her children; if the member leaves neither husband, wife nor children, the benefit will be payable to the Executor, Administrator or legally designated representative.

The sum of $500.00 shall be taken from the general fund and set aside in a special fund to be known as the Allied Trades Club, Inc., Death Benefit Fund, and thereafter twenty five cents of every dollar collected each year for dues shall be set aside in the death benefit fund. When this fund reaches the amount of $5,000.00, there shall be no money set aside from the collection of dues until the death benefit fund has dropped to $1,000.00, at which time the twenty five cents of each dollar collected for dues shall again be set aside in the death benefit fund until it again reaches the amount of $5,000.00.

If at any time there are not sufficient funds in the death benefit fund to meet the current demands, then sufficient money shall be borrowed from the general fund to meet current demands, and replaced when the death benefit fund again permits.

The petitioner had 488 active and 1,798 associate dues paying members in 1950 and 558 active and 1,748 associate dues paying members in 1951.

The income and expenditures of the petitioner for the taxable years were as follows:

| Income | 1950 | 1951 |
|---|---|---|
| Dues | $2,133.10 | $3,345.95 |
| Initiation fees | 1,565.85 | 1,871.05 |
| Slot machines | 47,654.45 | 48,414.85 |
| Bar and food | 91,262.90 | 92,859.51 |
| Rents, music, cigarettes, boat rent, sale of keys, interest | 2,486.18 | 3,991.58 |
| Total | $145,102.48 | $150,482.94 |

| Expenditures | 1950 | 1951 |
|---|---|---|
| Cost of goods | $53,479.48 | $54,967.89 |
| Salaries and wages | 62,122.04 | 60,224.60 |
| Maintenance and operating expenses | 16,196.94 | 16,208.50 |
| Donations | 451.50 | 430.50 |
| Other items | 10,473.02 | 15,161.58 |
| Transfers to death benefit fund account | 573.00 | 514.50 |
| Total | $143,295.98 | $147,507.57 |

All dues and initiation fees collected by the petitioner were deposited in its general bank account. The petitioner transferred $500 from its general fund to a separate bank account known as "Allied Trades Club (Death Benefit Fund)" on July 24, 1948. The amount of dues allocable to the death benefit fund was entered monthly in a death benefit account on the books of the petitioner. That account did not reflect the actual transfer of funds. Withdrawals from the petitioner's general bank account were made from time to time by checks which were deposited in the separate death benefit bank account. All death benefits paid to members were paid from the latter account. The actual payments in 1950 amounted to $629.50 and those for 1951 amounted to $250. The balance in the special death benefit account varied from the opening balance of $500 to a high of $1,256.06 on September 10, 1951.

The Commissioner, in determining the deficiencies, held that the petitioner had net income of $3,062.23 for 1950 and $4,149.95 for 1951, consisting mostly of operating income but including for each year interest income of $962.50 and "contributions" amounting in each year to less than $300.

Section 101 (9) exempts from taxation "clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder." The taxpayer must show that it comes within those exempting provisions. Section 29.101 (9)–1 of Regulations 111 states that the above provisions apply to social and recreation clubs which are supported by membership fees, dues, and assessments, but if a club engages in traffic or other activities for profit it is not organized and operated exclusively for pleasure, recreation, or social purposes. The death benefit activity of the petitioner was not an isolated transaction or an adjunct of some more important purpose of the club. It had no particular relation to the other purposes of the club. It could not be classified as an operation for pleasure, recreation, or social purposes and, therefore, the petitioner was not operating exclusively for such purposes. Cf. *Jockey Club*, 30 B. T. A. 670, affd. 76 F. 2d 597; *West Side Tennis Club*, 39 B. T. A. 149, affd. 111 F. 2d 6, certiorari denied 311 U. S. 674; *Chattanooga Automobile Club*, 12 T. C. 967, affd. 182 F. 2d 551; *Keystone Auto-*

*mobile Club*, 12 T. C. 1038, affd. 181 F. 2d 402; sec. 101 (3). Furthermore, a part of its net earnings set aside for the death benefits inured to the benefit of members. Cf. *Aviation Club of Utah*, 7 T. C. 377, affd. 162 F. 2d 984, certiorari denied 332 U. S. 837. The provision that a part of the dues were to go into the death benefit fund is immaterial since dues are a part of net earnings. *Jockey Club, supra.* That provision may have been actuarially unsound unless saved by the volume of changing membership. Actually, the amounts used to pay the death benefits were taken out of the general funds of the petitioner and thus came from its earnings, which earnings included dues. The petitioner is not exempt under section 101 (9).

*Decision will be entered for the respondent.*