## CROCKER v. LUCAS, Commissioner of Internal Revenue.

Circuit Court of Appeals, Ninth Circuit.
January 13, 1930.

No. 5859.

Morrison, Hohfeld, Foerster, Shuman & Clark, Herbert W. Clark, and Leon De Fremery, all of San Francisco, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Morton Fisher, and Harvey Gamble, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. Between the years 1899 and 1902, the petitioner acquired all of the capital stock of the Modelo Oil Company, a California corporation, and loaned money to the corporation, taking notes therefor. Some time prior to March 1, 1913, the loans thus made reached an aggregate of $147,681.59. In 1921 the corporation sold all of its assets for the sum of $75,000, and the amount thus realized was paid to the petitioner, leaving an unpaid balance due on the notes, amounting to the sum of $69,231.59. During 1921 this unpaid balance was ascertained to be worthless and charged off, and in computing his net income for that year the petitioner claimed the right to deduct the amount thus charged off as a loss sustained during the taxable year. On the hearing before the Board of Tax Appeals, it was stipulated:

"(1) That in the event the board should hold as a matter of law that, in the case of an indebtedness arising prior to March 1, 1913, the deduction allowed by section 214 (a) (7) of the Revenue Act of 1921 is the full amount of the debt ascertained to be worthless and charged off in the taxable year, then in that event the deductible loss sustained by the petitioner in 1921 on the notes of the Modelo Oil Company upon liquidation of the corporation in 1921 was the sum of $69,231.59.

"(2) That in the event the Board should hold that, in the case of an indebtedness arising prior to March 1, 1913, the deduction allowed by section 214 (a) (7) of the Revenue Act of 1921 is limited by the March 1, 1913, value of the debt ascertained to be worthless and charged off in the taxable year, then in that event no deductible loss was realized by the petitioner on the notes of the Modelo Oil Company upon liquidation of the corporation in 1921."

On the foregoing facts the Board of Tax Appeals held that the petitioner, having already received the fair market value of the notes as of March 1, 1913, suffered no loss within the meaning of the law, and was entitled to no further deduction. The correctness of this ruling is the only question presented for consideration.

Section 202 of the Revenue Act of 1921 (42 Stat. 229) provides that the basis for ascertaining a gain derived or loss sustained from the sale or other disposition of property, real, personal or mixed, acquired prior to March 1, 1913, shall be the fair market value as of that date, if less than the cost of the property. Section 214 provides that, in computing net income, there shall be allowed, as deductions, debts ascertained to be worthless and charged off within the taxable year. The government contends that the charging off of a debt ascertained to be worthless is a disposition of property within the meaning of the Revenue Act, and its contention in that regard is fully supported by the decision of the Court of Appeals of the District of Columbia in Ayer v. Blair, 58 App. D. C. 175, 26 F.(2d) 547.

Counsel for petitioner earnestly insist that the decision in the Ayer Case is unsound, and that the charging off of a debt ascertained to be worthless is not a disposition of property, within the meaning of an act providing "for a sale or other disposition." It will readily be conceded that the word "disposition," when used in connection with the word "sale," would ordinarily be construed to mean a transfer of some kind, bearing some analogy to a sale. But the same word does not always mean the same thing, in a statute or elsewhere, and for tax purposes, at least, the charging off of a debt evidenced by promissory notes disposes of the notes and the indebtedness evidenced thereby as effectually as would a sale or any other disposition the owner might make.

It will perhaps be conceded that, if the notes evidencing the indebtedness in question had been sold, the loss to the petitioner would be measured by the difference between their fair market value as of March 1, 1913, and the amount realized from the sale; and the collection of a part of the indebtedness and

charging off the balance should have no other or different effect, unless the language of the statute impels us to a different conclusion. We are not convinced that it does. The regulations promulgated by the Treasury Department have at all times since 1918 provided that, in case of debts existing prior to March 1, 1913, only their value on that date may be deducted upon subsequently ascertaining them to be worthless.

"It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision." Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 157, 64 L. Ed. 297.

Again: "We make this concession because we think we are constrained to so do, in consequence of the familiar rule that a construction made by the body charged with the enforcement of a statute, which construction has long obtained in practical execution, and has been impliedly sanctioned by the re-enactment of the statute without alteration in the particulars construed, when not plainly erroneous, must be treated as read into the statute." New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 401, 26 S. Ct. 272, 281, 50 L. Ed. 515.

The regulation in question is not in conflict with any express statutory provision; it has obtained in practical execution nearly as long as there will be any room for its application; it has been impliedly recognized by the re-enactment of the revenue laws without alteration in the particulars construed, because we find nothing in later amendments militating against the construction adopted by the department, and it is not plainly erroneous. In the early administration of the revenue laws there was doubtless frequent call for the application of this regulation; yet, so far as we are advised, its validity has never been called in question, either before the Board of Tax Appeals or in the courts, except in the Ayer Case and in the present one. The time is fast approaching when there will be no need for such a regulation, because all indebtedness contracted prior to that early date will soon be liquidated or discharged in some way, if not already liquidated or discharged. And, if the question were open to doubt as an original proposition, we feel constrained to hold that a construction placed upon a statute by the depart-

ment charged with its administration, and so long acquiesced in by the public, should not be overturned or departed from at this late day, especially in view of the situation to which we have referred.

The decision of the Board of Tax Appeals is affirmed.