**BOYNE CITY LUMBER CO. v. DOYLE et al.**
**No. 3239.**

District Court, W. D. Michigan, S. D.

July 11, 1930.

Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., for plaintiff.

Fred C. Wetmore, Dist. Atty., of Grand Rapids, Mich., for defendants.

RAYMOND, District Judge.

Plaintiff in this suit sues to recover alleged overpayments made by it on income and excess profits taxes for the years 1918 and 1919. The controversy arises out of the·application and construction of sections 202 (a) (1) and 234 (a) (9) of the Revenue Act of 1918 (40 Stat. 1060, 1077), and regulations prescribed by the Commissioner of Internal Revenue

pursuant thereto, known as articles 230 and 235 of Regulations 45, which, so far as pertinent, are appended hereto.[1]

The amounts which the taxpayer seeks to recover by way of refund result from a redetermination of the fair market value of the taxpayer's stumpage as of March 1, 1913. It is the contention of the plaintiff that, because of the direct prohibition against revaluation as of March 1, 1913, contained in article 235, the Commissioner of Internal Revenue, after having placed a valuation upon a taxpayer's stumpage, cannot thereafter change the amount so fixed in the absence of fraud or misrepresentation.

Defendant contends that the true meaning of articles 230 and 235 is that no revaluation of timber is allowable during the same ownership if the true market value as of March 1, 1913, has been determined; that the regula-

[1] "For the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—(1) in the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date." Section 202(a) (1), Revenue Act 1918.

"In computing net income of a corporation * * * there shall be allowed as deductions * * * (9) in the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date. * * * Such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary [of the Treasury]." Section 234(a) (9), Revenue Act 1918.

"Revaluation of stumpage not allowed. The fair market value of stumpage when determined as of March 1, 1913, for the purpose of depletion allowances in the case of timber acquired prior thereto, shall be the basis for determining the depletion deduction for each year during the continuance of the ownership under which the fair market value of the stumpage was fixed, and during such ownership there can be no redetermination of the fair market value of the stumpage for such purpose. However, the unit market value of stumpage adopted by the taxpayer may subsequently be changed if from any cause such value, if continued as a basis of depletion, should upon evidence satisfactory to the Commissioner be found inadequate or excessive for the extinguishment of the fair market value of the timber as of March 1, 1913." Article 230, Regulations 45.

"* * * If subsequently during the ownership of the taxpayer making the return, as the net result of the growth of the timber, of changes in standards of utilization of losses not otherwise accounted for, of abandonment of timber, and/or errors in the original estimates, there are found to remain on the ground, available for utilization, more or less units of timber than remain in the timber account or accounts, a new estimate of the recoverable units of timber (but not of the cost or fair market value at a specified date) shall be made, and when made, shall thereafter constitute a basis for depletion." Article 235, Regulations 45.

tion is purely an administrative measure which cannot properly be construed as depriving the Commissioner of the power to correct on his own motion an error whether in favor of or against the taxpayer, or as requiring him to compute depletion allowances upon the basis of anything except cost or March 1, 1913 value.

Plaintiff relies principally upon the cases of Woodworth v. Kales (C. C. A.) 26 F.(2d) 178, and Penrose v. Skinner (D. C.) 278 F. 284; Id. (D. C.) 298 F. 335; while defendant relies largely upon the cases of Holmquist v. Blair (C. C. A.) 35 F.(2d) 10; Loewy & Son, Inc., v. Commissioner (C. C. A.) 31 F.(2d) 652; Austin Co. v. Commissioner (C. C. A.) 35 F.(2d) 910; Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; McIlhenny et al. v. Commissioner (C. C. A.) 39 F.(2d) 356.

It is to be observed that the question is not one of correction of the computation by the Commissioner of a tax for a particular year. It does involve the right of the Commissioner to make a redetermination of the value of tangible assets of a taxpayer owned on March 1, 1913. Defendant contends that to construe article 230, as contended by plaintiff, would nullify the regulations, because the statute requires that depletion shall be based on the March 1, 1913, value of the timber, and not upon an arbitrary figure which may be incorrect, and urges that such a construction would change the statutory basis from the March 1, 1913, value to any other value found by the Commissioner, and that this would, in effect, defeat the law.

It has long been recognized that questions of value and estimates thereof involve matters of opinion upon which minds are prone to differ. An opinion as to value is generally based upon a prior determination of extrinsic facts. Disagreement as to these facts often results in difference of opinion as to value. Common experience indicates that agreement upon these extrinsic facts offers no assurance of agreement upon the ultimate question of value. The difficulties inherent in the problem are increased when an attempt is made to determine values as of a distant date either past or future. The problem then often becomes more complicated by changes in the unit of value, the loss or destruction of records, and the lack of availability of witnesses having knowledge of the facts. These considerations make necessary some rule of finality of determination. It seems to the court that neither the contention of the defendant that the only way by which the Com-

missioner can be foreclosed from changing a determination as to the March 1, 1913, value of a taxpayer's property is by the running of the statute of limitations, nor that of the plaintiff that such determination cannot thereafter be altered in the absence of fraud or misrepresentation, is tenable. To say that such determination may not be reopened because of gross error by either the Commissioner or the taxpayer is as unsupportable in principle as to say that it may be reopened by each succeeding Commissioner, or by the same Commissioner, because a review of the same facts results in a difference or change of opinion. The true principle should be that such a determination may not be reopened, except for fraud, misrepresentation, or gross error.

■ Counsel for defendant states that there is no contention made here that the taxpayer was guilty of fraud or misrepresented anything. This case must therefore turn upon the question of whether or not the record discloses such gross error as to warrant the Commissioner in making a redetermination of 1913 values. If there were here no evidence of the basis of the revaluation made by the Commissioner, the presumption of regularity and validity of the Commissioner's action would necessarily result in the conclusion that further facts were before him upon his second determination warranting the conclusion that gross error had been committed in the first determination. See cases of U. S. v. Chemical Foundation, 272 U. S. 1, 14, 47 S. Ct. 1, 71 L. Ed. 131; Austin Co. v. Commissioner of Internal Revenue (C. C. A.) 35 F. (2d) 910.

In this case, however, the basis of redetermination appears from the valuation report by timber section (Exhibit 18). The grounds for revaluation are therein stated as follows:

"An examination of this information discloses that the basis for valuation furnished by the taxpayer in its original questionnaire is erroneous in several important particulars. In view of these circumstances, it appears that a revision of valuation report dated 11—27—20 is warranted.

"The valuation previously allowed for the timber and land in Block 1 was on the basis of $110.50 per acre. It now appears that the average stand of timber per acre as indicated by its cutting records was 17,880 ft. as against an average stand of 12000 ft. per acre reported in its questionnaire. * * *

"Block 2. The original valuation basis of $101.00 per acre for land and timber is herewith affirmed. Information submitted, however, indicates that the stand per acre on this block was erroneously reported, and therefore, the unit rate per M is adjusted in accordance with the value approved and the average stand per acre as developed by its cutting records which gives a unit rate of $5.37 per M. The total quantity of timber is accepted tentatively for closing the case thru 1918." Exhibit 18.

At the time of the presentation of this case before the Board of Tax Appeals all of plaintiff's timber had been cut. It appears from the findings of the Board (Exhibit B) that the actual average cut of timber per acre was 13,643 ft. for block 1. The difference between this and the average stand of twelve to thirteen thousand feet per acre reported in the taxpayer's questionnaire cannot be regarded as "gross error" upon which a revaluation could properly be based.

■ With reference to the revaluation as applied to block 2 (excepting for the presumption hereinbefore referred to), there is nothing in the record to indicate that any other facts or evidence were before the Commissioner upon the redetermination than were submitted in the first instance. The plaintiff has offered in evidence all of the new or additional information which it placed before the Commissioner. A fair construction of Exhibit 18 is that it was upon this additional information that the revaluation was based. Examination thereof convinces the court that there is nothing to support the claim that the Commissioner had before him different facts and information than were available when the original valuation was made so far as the documents relate to stumpage values as of March 1, 1913. It is fair to assume that when the taxpayer has met the presumption of regularity of action by a government official by the production of evidence the government should then disclose all other or different information if any relating to values which it possessed when the revaluation was made. This the government has failed to do and it may fairly be assumed that there was none. Consideration of the evidence that was produced convinces the court that the revaluation in this case as to both blocks 1 and 2 was not based upon new and additional facts showing gross or substantial error, but solely upon reconsideration of facts already before the Commissioner at the time of the first determination which resulted in a change of

opinion upon that subject. This it seems to the court is contrary to both the letter and the spirit of the regulation hereinbefore referred to and is contrary to the principles announced in the case of Woodworth v. Kales, supra.

Judgment will therefore be entered in favor of plaintiff and against defendant in the aggregate sum of $11,117.62, with interest at 6 per cent. from December 15, 1919, and $11,-348.66, with interest at 6 per cent. from December 15, 1920.