**AUTOMOBILE CLUB OF MICHIGAN,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

No. 12247.

United States Court of Appeals
Sixth Circuit.

Feb. 17, 1956.

McAllister, Circuit Judge, dissented.

**586**

Lincoln Arnold, Washington, D. C., Raymond H. Berry, Detroit, Mich. (A. H. Moorman, John L. King, Detroit, Mich., on the brief), for petitioner.

I. Henry Kutz, Washington, D. C. (H. Brian Holland, Ellis N. Slack, Washington, D. C., on the brief), for respondent.

Before ALLEN, McALLISTER and STEWART, Circuit Judges.

ALLEN, Circuit Judge.

This case arises on petition to review a decision of the Tax Court of the United States sustaining a determination of deficiencies for the calendar years 1943 to 1947, inclusive, in the aggregate amount of $447,445.44, $161,184.43 being income taxes and $286,261.01 being excess profits taxes. Petitioner was organized as a nonprofit corporation without capital stock or shares and has never paid dividends. The facts are not in dispute and the questions presented are questions of law. The purposes of petitioner stated in its Articles of Association are the following:

> To promote and foster the healthy growth of the automobile industry; to secure the adoption and enforcement of reasonable and useful traffic ordinances and motor vehicle laws; to promote the establishment and construction of permanent highways for traffic; to interest automobile owners and drivers in the principles of "Safety First," as applied to automobile traffic; to promote touring and to obtain and furnish touring information and the necessary sign boarding of public highways; and to cooperate in any work or movement which may tend to benefit the automobile driver, user, owner, or manufacturer, and the automobile industry in general.

As found by the Tax Court:

> During 1943 through 1947 the petitioner devoted most of its resources and efforts to the bettering of conditions for motorists and the promotion of proper laws relating to the use of the motor car, the promotion of travel and the use of the automobile for other modes of transportation. It engaged in the promotion of safety, the solution of traffic problems and the promotion of the formation of school boy patrols. It organized the school boy patrols in Michigan. To teachers in the schools it furnished textbooks dealing with the conduct and operation of school boy patrols. As a reward it annually took some of the patrol boys to Washington, D. C. Annually it conducted seminars in the University of Michigan to promote the education of school teachers in the state in driver training courses. Petitioner's safety and traffic and engineer departments made surveys throughout the State of Michigan at the request of various cities and communities and many of its proposals as to safety measures were adopted. Petitioner supplied to its members in Michigan and those affiliated with the American Automobile Association emergency road service. The petitioner published and furnished to each of its active members a magazine containing news about travel and news about laws as they pertain to the use of

automobiles. Maps and other touring information with reference to road conditions were also provided, as was assistance to the American Automobile Association in its designation or appointment of proper places for tourists to be housed and fed. The petitioner secured reservations for its members when traveling abroad and arranged for the shipping of their cars abroad. Petitioner also promoted and furnished gratis to various communities proper directional and stop signs. In its services the petitioner attempted to do for the motorist in a collective way that which he was unable to do as an individual.

The petitioner does not engage in or conduct any social activities.

Petitioner during 1934 had supplied the Commissioner with detailed information concerning its operations, its financial assets and liabilities, and its receipts and disbursements. On June 11, 1934, the Commissioner wrote petitioner that on the basis of evidence submitted petitioner was entitled to exemption under the provisions of Section 103(9) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev. Acts, page 507, and the corresponding sections of prior revenue acts; that, therefore, it was not required to file returns for 1933 and prior years, and that under the provisions of Section 101(9) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 688, it would not be required to file returns so long as there was no change in its organization, its purposes or methods of doing business.

On July 5, 1938, after submission by petitioner of the information required concerning its claim for exemption under Section 101(9) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 849, the Commissioner wrote petitioner advising it that "since it appeared that there had been no change in its form of organization or activities which would affect its status, the previous ruling of the Bureau holding it to be exempt from filing returns of income was affirmed under the Revenue Act of 1936."

In May, 1935, the Commissioner wrote petitioner that the Bureau of Internal Revenue was reconsidering the question of the exemption of automobile associations from Federal income taxation in light of the opinion of the Chief Counsel of the Bureau of Internal Revenue as set forth in G. C. M. 23688, C.B.1943, 283. After petitioner had furnished certain further information, the Commissioner again wrote petitioner on July 16, 1945, calling attention to the fact that Section 101(9) of the Internal Revenue Code, 26 U.S.C.A., provides for the exemption of

"Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder".

The Commissioner's communication continued as follows:

"This office holds that the term 'club' as used in the above section of law contemplates commingling of members, one with the other in fellowship. Thus, an organization should be so composed and its activities be such that fellowship among the members plays a material part in the life of the organization in order for it to come within the meaning of the term 'club.'

"The evidence submitted shows that fellowship does not constitute a material part of the life of your organization and that your principal activity is the rendering of commercial services to your members.

"It is, accordingly, held that you are not a club 'organized and operated exclusively for pleasure, recreation and other nonprofitable purposes,' within the meaning of section 101(9) of the Internal Revenue Code or the corresponding sections of prior revenue acts, and, therefore, are not entitled to exemption under those sections. Furthermore, there is no other provision of law under which an organization of your character can be held to be exempt from Federal income tax.

"Bureau rulings of June 11, 1934 and July 5, 1938 are hereby revoked.

"In view of all the facts and circumstances in your case it is held, with the approval of the Secretary of the Treasury, that you will not be required to file income tax returns for years beginning prior to January 1, 1943. You are, however, required to file returns for the year 1943 and subsequent years."

In compliance with this communication petitioner filed income and excess profits tax returns for the calendar years 1943 and 1944 under protest, on the ground that it was exempt from taxes, and filed a petition to review the determination of the Commissioner. During the trial before the Tax Court petitioner admitted that it was taxable "for the period subsequent to July 16, 1945," but contended that the Commissioner acted arbitrarily and without authority in revoking previous rulings as to exemption, and in determining a deficiency in taxes for any period prior to July 16, 1945. In this court petitioner contends that the Commissioner in 1945 was estopped from retroactively revoking the prior determinations, made by a predecessor Commissioner, upon the ground that there had been no change in the law or in the character and operation of petitioner as a club.

■ The Commissioner ruled correctly in his determination of July 16, 1945, that petitioner was not exempt from tax under Section 101(9), Internal Revenue Code. The statute plainly applies, as decided in G. C. M. 23688, not to any and all organizations in which no dividends are declared, but to "clubs," namely, to organizations in which members commingle in fellowship. Also this section of the statute applies, not to every kind of club, but to clubs organized and operated exclusively for pleasure, recreation and other nonprofitable purposes. Since petitioner performs commercial services for its members it is not the kind of organization defined in the statute. The right to exemption which arises under Section 101(9), as it is

created by statute, cannot be modified by the regulations. Since petitioner did not fall within the exemption provision it was at no time exempt from taxation, but was excused from taxation by a legal error of the Commissioner. The requirement that petitioner file returns for the years 1943 and 1944 was therefore valid and proper and, since petitioner was not required to file returns for a number of preceding years, it cannot be claimed that the ruling was arbitrary and oppressive.

As to the question of estoppel, petitioner does not assert that it has altered its position to its detriment in reliance on the former rulings of the Commissioner. In default of proof to that effect estoppel does not enter into the case.

■ Petitioner urges that H. S. D. Co. v. Kavanagh, 6 Cir., 191 F.2d 831, and Woodworth v. Kales, 6 Cir., 26 F.2d 178, require reversal of the Tax Court's decision. In the H. S. D. Co. case the District Court, which had upheld the Commissioner in changing a ruling as to the exemption from taxation of contributions to two employees' trusts, was reversed by this court. We held that the Commissioner under the facts of that case was bound by the previous rulings of his predecessor determining that contributions to the employees' trusts were exempt from taxation. The court pointed out that the reasons for the successor Commissioner's action involved no new facts and no mistake of law, but only different inferences from the same facts. We there cited with approval an opinion by Judge Raymond, Boyne City Lumber Co. v. Doyle, D.C.Mich., 47 F.2d 772, which declared that it is "an insupportable principle to say that such a determination of value may be reopened by each succeeding Commissioner, or by the same Commissioner, because a review of the same facts results in a difference or change of opinion." [191 F.2d 846.] In Woodworth v. Kales, supra, this court held that, where income tax was assessed under a ruling approved by the then Commissioner of Internal Revenue, a succeeding Commissioner was without au-

thority, upon a re-examination of the same evidence to revoke such assessment and reassess an additional tax. The court concluded that there was no statutory authority for the right to reopen and re-examine the question of the 1913 fair value of the stock involved and "then, upon a re-examination of the same evidence, to reach a different result, flowing not from the discovery of any fraud or mistake, clerical or otherwise, in any fundamental fact or matter of law, but resulting only from a 'more matured judgment.'" [26 F.2d 180.] These cases do not, however, support petitioner's contention. In the Kales case the court declared that the Commissioner's "mistake of law will often, or usually, justify a revision of his conclusion." In the H. S. D. Co. case we pointed out that the facts involved "no mistake of law, but only different inferences from the same facts". The Commissioner is not bound by his own or his predecessor's prior mistakes of law. Chattanooga Automobile Club v. Commissioner of Internal Revenue, 6 Cir., 182 F.2d 551; Austin Co. v. Commissioner of Internal Revenue, 6 Cir., 35 F.2d 910; Keystone Automobile Club v. Commissioner of Internal Revenue, 3 Cir., 181 F.2d 402; Smyth v. California State Automobile Association, 9 Cir., 175 F.2d 752, certiorari denied 338 U.S. 905, 70 S.Ct. 307, 94 L.Ed. 557. Cf. Langstaff v. Lucas, D.C., 9 F.2d 691, affirmed per curiam 6 Cir., 13 F.2d 1022, certiorari denied 273 U.S. 721, 47 S.Ct. 111, 71 L.Ed. 858.

That the ruling of July 16, 1945, corrected a mistake of law cannot be disputed. The principal question was the legal significance of the word "club" in Section 101(9) of the Internal Revenue Code. Another statutory question was, if petitioner was a club in which its members commingled in fellowship, whether the organization and operation were exclusively for pleasure, recreation, and other nonprofitable purposes. The earlier Commissioners by their erroneous construction of the statute had made mistakes of law which were subject to correction by the later Commissioner.

Petitioner also claims that, irrespective of the decisions in the H. S. D. Co. and the Kales cases, supra, it is entitled to exempt status under the doctrine of Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. This is on the theory that the Treasury Regulations 111, Section 29.101–1, and previous corresponding Regulations provided in substance that when an organization has established its right to exemption it need not thereafter make a return of income or any further showing with respect to its status unless it changes the character of its operations or the purpose for which it was originally created. An amendment made to the Regulations later in 1944 contained substantially the same provision. Congress enacted a number of Internal Revenue statutes during this period to which the Treasury Regulations cited apply, but Congress did not alter or change the law so as to affect these Regulations. Petitioner therefore claims that the Regulations cited, under the authority of the Reynolds case, supra, constitute a rule of law which cannot be changed by a subsequent determination of the Commissioner.

In the Reynolds case the Supreme Court ruled that the gain secured by a corporation in the sale of its own stock in 1929 should be governed by the regulation in force in 1929, rather than by an amendment adopted by the Treasury in 1934, which made sales by a corporation of shares of its own capital stock subject to tax under certain circumstances. The Supreme Court refused to permit retroactive application of the Treasury amendments of 1934.

The Tax Court differentiated the Reynolds case from the instant one upon the ground that the Regulations there involved provided that a corporation realizes no gain or loss from the sale of its own stock and hence were legislative in character, while the Regulations here involved, Section 29.101–1 of Regulation 111, are administrative only.

In addition to this valid distinction between the Reynolds case and that pre-

sented herein we think a cogent answer to petitioner's contention is that upon this branch of the case it proceeds from its false premise that it established the right to exemption in 1934–1936, long before July 16, 1945, when the Commissioner revoked his previous ruling. Petitioner never had that right. If it had actually established such a right, the Commissioner could not rightfully revoke it, yet petitioner does not contest the Commissioner's right of revocation. The fact that the Commissioner in his earlier rulings misinterpreted the statutory meaning of the term "club" and ignored the circumstance that the services rendered petitioner's members were purely commercial, does not demonstrate that petitioner established a right to exemption. It demonstrates that the Commissioner made a mistake of law which under the weight of authority he was entitled to correct. Chattanooga Automobile Club v. Commissioner of Internal Revenue, supra; Keystone Automobile Club v. Commissioner of Internal Revenue, supra; Smyth v. California State Automobile Association, supra.

The retroactive ruling of the Commissioner ordering that tax returns be filed for 1943 and 1944 was authorized under Section 3791(b) of the 1939 Code, 26 U.S.C.A. This section reads as follows:

"Retroactivity of regulations or rulings. The Secretary, or the Commissioner with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision, relating to the internal revenue laws, shall be applied without retroactive effect."

This provision clearly vests the Secretary or the Commissioner acting with approval of the Secretary, with the discretionary power to prescribe the extent, "if any," to which the ruling of the Commissioner shall or shall not be retroactive. The phrase "if any," authorizes the Secretary or the Commissioner acting with the approval of the Secretary to withhold retroactivity for the entire period involved or for any part

thereof. In the instant case, if the Commissioner's ruling of July 16, 1945, were given full retroactive effect, it would require return of income taxes between the years 1934 and 1945. The Committee Reports of the House of Representatives, in recommending enactment of the predecessor section of the 1934 Act, pointed out that "Regulations, Treasury Decisions, and rulings which are merely interpretive of the statute, will normally have a universal application. * * *" (House Report No. 704, 73rd Congress, 2d Section, page 38). The report then goes on to state that the cases involving rulings with reference to past transactions which have been closed by taxpayers in reliance upon existing practice, in some cases will work such inequitable results that it is believed desirable to lodge in the Treasury Department the power to avoid these results by applying certain regulations, Treasury Decisions, and rulings with prospective effect only. This legislative history supports the above construction of Section 3791(b).

Under the established principle that the greater power includes the less, this statute conferred authority upon the Treasury officials named to make the ruling of July 16, 1945, retroactive for only part of the period involved and for only two of the thirteen years. We conclude that this action was in no way arbitrary. The taxpayer was not misled nor has it shown that any unusual hardship resulted from the Commissioner's action.

Petitioner next urges that the statute of limitations bars assessment of the deficiencies asserted, contending that the period of limitations commenced to run from March 15, 1944, and March 15, 1945, when the 1943 and 1944 returns were due. If this is true, the assessment is barred. Ordinarily the three-year statute of limitations begins to run from the date that the return is filed, which date was October 22, 1945. If this date controls, the assessment is not barred. Section 275(a) I.R.C. Petitioner claims that it was under no duty to file a return

and that in such case the three-year statute of limitations starts running from the date the return should have been filed if there had been a duty to file it. Balkan Nat. Ins. Co. v. Commissioner of Internal Revenue, 2 Cir., 101 F.2d 75.

In this connection the chronology of the proceedings is important. The rulings of exemption were revoked on July 16, 1945. Petitioner was ordered to file 1943 and 1944 returns and these returns were filed October 22, 1945. The parties on August 25, 1948, executed consents that the income and excess profits taxes could be assessed on or before June 30, 1949, and on May 23, 1949, executed similar consents that the income and excess profits taxes could be assessed on or before June 30, 1950. The notice of deficiency was mailed to petitioner February 20, 1950.

Petitioner's assertion that his returns were due in March, 1944, and March, 1945, ignores the fact that Section 276 (a) provides that in the case "of a failure to file a return the tax may be assessed * * * at any time."

■ The Commissioner relies upon this statute and points out that petitioner failed to file the returns for 1943 and 1944 until three months after July 16, 1945. Petitioner answers that it was entirely blameless in its failure to file upon the due dates because its inaction was caused by the Commissioner. But when on July 16, 1945, the Commissioner expressly required petitioner to file returns, petitioner was under an obligation to file them as ordered. The delay in filing for more than three months was not induced by the Commissioner. Moreover, petitioner voluntarily agreed twice to extension of time for the assessment of the tax. This was not induced by the Commissioner.

The returns made upon Form 990 did not constitute the returns contemplated by Section 275(a), namely, return of income taxes. They were not appropriate for the computation or assessment of income or excess profits taxes. As held by the Tax Court, they did not contain the data necessary to enable the Commissioner to compute petitioner's liability. Two taxes were involved here, income and excess profits taxes for 1943 and 1944. The returns on Form 990 for each year were not the returns required of corporations under Section 52(a) of the Internal Revenue Code. The contention that where two returns are required one return answers the purpose was dismissed by the Supreme Court of the United States as having no merit in Commissioner of Internal Revenue v. Lane-Wells Co., 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684. We conclude that under this record the assessment was not barred by Section 275(a).

■ The determination that membership dues received by petitioner should be included in the return of income for the year in which they were received was clearly correct. E. H. Sheldon & Co. v. Commissioner of Internal Revenue, 6 Cir., 214 F.2d 655, 656; S. Loewenstein & Son v. Commissioner of Internal Revenue, 6 Cir., 222 F.2d 919; Spencer, White & Prentis, Inc., v. Commissioner of Internal Revenue, 2 Cir., 144 F.2d 45, certiorari denied 323 U.S. 780, 65 S.Ct. 269, 89 L.Ed. 623; North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197; Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 523, 95 L. Ed. 560. In this case the Supreme Court stated "The 'claim of right' interpretation of the tax laws has long been used to give finality to that [the accounting] period, and is now deeply rooted in the federal tax system. * * * We see no reason why the Court should depart from this well-settled interpretation merely because it results in an advantage or disadvantage to a taxpayer."

■ In conclusion the Tax Court correctly decided the issue as to depreciation deductions. Petitioner relies upon two General Counsel Memoranda, Nos. 10857 and 27491, as requiring that a different formula for depreciation deduction be applied from that used by the Commissioner. These memoranda have

no bearing here. They come into force only where a petitioner is shown at some time during its existence to have been an organization exempt from taxation. As previously shown, petitioner was at no time exempt.

The decision of the Tax Court is affirmed.

McALLISTER, Circuit Judge (dissenting).

While cheerfully acknowledging the persuasiveness of the excellent opinion of Judge Allen, it appears to me that the decision of the Tax Court should be reversed for the reason that I consider the Commissioner's revocation of petitioner's tax-exempt status, with retroactive effect, to be inequitable. A summary of the facts may clarify the conclusion that I think should follow.

The record discloses that in May, 1934, the Commissioner of Internal Revenue, in reply to petitioner's written claim to exemption from federal income tax, requested evidence in support of its claim. This evidence was submitted in writing by petitioner and consisted of a detailed explanation of its activities, the sources from which its income was derived, the disposition it made of its income, and facts with respect to its capital stock, dividends, and all other relevant facts relating to its activities. It disclosed that its income came from dues paid by the members of the club and the sale of advertising in a monthly magazine published by it; that no dividends or interest were paid on capital stock, and that, in fact, the club had no capital stock. The evidence submitted to the Commissioner further disclosed that the club charged no entrance or initiation fees and that its activities were composed of touring service, including logs, road maps, general touring information to members, and emergency road service, such as starting of members' disabled cars on the road, towing them to official club garages, changing tires, and such similar services. Moreover, the club disclosed that it was interested in safety activities and that several men were employed by the club for work in the public schools as well as work in cooperation with the various cities of the State of Michigan to promote safety and improve traffic conditions. In addition, the club cooperated in all work or improvement which might tend to benefit the automobile driver, user, owner, or manufacturer, and the automobile industry in general.

After considering this evidence, the Commissioner wrote the club on June 11, 1934, stating:

"Reference is made to the evidence submitted by you in support of your claim to exemption from Federal income taxation. * * * it is held that you are entitled to exemption under the provisions of section 103(9) of the Revenue Act of 1932 and the corresponding sections of prior revenue acts. You are not, therefore, required to file returns for 1933 and prior years and it follows that future returns, under the provisions of section 101(9) of the Revenue Act of 1934, will not be required so long as there is no change in your organization, your purposes or methods of doing business."

More than three years later, on September 29, 1937, the Commissioner sent the club a questionnaire and requested it to supply certain information concerning its claim for exemption under Section 101(9) of the Revenue Act of 1936. The club filled in the questionnaire, signed it, and returned it to the Commissioner, with a letter dated October 27, 1937, together with a copy of its financial statement as of December 31, 1936. Thereafter, the Commissioner again determined that the club was tax-exempt under the Revenue Act of 1936, as it had been under the Revenue Act of 1932 and all prior revenue acts, and so notified the club by a letter dated July 5, 1938, in which the Commissioner stated:

"Reference is made to the questionnaire and supporting data submitted in response to the request of the Bureau for the purpose of determining whether the exemption from

income taxation under the provisions which now appear in Section 101 of the income tax law, to which you have heretofore been held to be entitled, is equally applicable under the Revenue Act of 1936.

"Careful consideration has been given to the evidence submitted and as it appears that there has been no change in your form of organization or activities which would affect your status the previous ruling of the Bureau holding you to be exempt from filing returns of income is affirmed under the Revenue Act of 1936."

Seven years later, on May 12, 1945, a new Commissioner wrote the club, stating:

"Reference is made to Bureau ruling of June 11, 1934, holding you entitled to exemption from Federal income tax under the provisions of section 103(9) of the Revenue Act of 1932 and the corresponding provisions of prior revenue acts, which ruling was affirmed July 5, 1938, under the provisions of the Revenue Act of 1936.

"The Bureau is now reconsidering the question of the exemption of automobile associations from Federal income tax in the light of the opinion of the Chief Counsel of the Bureau of Internal Revenue in regard thereto * * *."

The Commissioner's letter further requested the club to submit evidence similar to that which it had already submitted on several occasions.

The club, in reply to the request of the Commissioner, thereafter submitted the information requested, which was, in all important particulars, the same as that which it had repeatedly furnished during the prior eleven years.

Upon receipt of this information, the new Commissioner made a determination based upon the same facts, law, and regulations as were in effect during the prior determinations, to the effect that the tax-exempt determinations of the prior

Commissioner were erroneous and, accordingly, retroactively revoked the club's tax-exempt status by letter of July 16, 1945, which stated:

"Reference is made to the information submitted by you for use in determining your status for Federal income tax purposes in view of the opinion expressed [by the Chief Counsel of the Bureau of Internal Revenue].

"Under date of June 11, 1934 you were held entitled to exemption from Federal income tax under the provisions of section 103(9) of the Revenue Act of 1932 and the corresponding provisions of prior revenue acts, which ruling was affirmed July 5, 1938, under the provisions of the Revenue Act of 1936.

"The information recently submitted by you shows that your activities consist of providing travel information and service, rendering emergency road service, publishing the Motor News, locating automobile parts for members' cars to keep them in service, providing safety education in public and parochial schools, organizing and equipping school patrols and providing traffic surveys for Michigan cities in the interest of safety. Your income is derived from membership dues, interest on investments, and advertising in the Motor News. It is expended for rendering services to your members."

The above evidence which the Commissioner referred to as "the information recently submitted by you" was exactly the same evidence that had been submitted by the club eleven years before.

The above letter from the Commissioner continued:

"Section 101(9) of the Internal Revenue Code provides for the exemption of:

" 'Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which in-

ures to the benefit of any private shareholder'.

"Prior revenue acts carry similar provisions.

"This office holds that the term 'club' as used in the above section of the law contemplates commingling of members, one with the other in fellowship. Thus, an organization should be so composed and its activities be such that fellowship among the members plays a material part in the life of the organization in order for it to come within the meaning of the term 'club'.

"The evidence submitted shows that fellowship does not constitute a material part of the life of your organization and that your principal activity is the rendering of commercial services to your members.

"It is, accordingly, held that you are not a club 'organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes,' within the meaning of section 101(9) of the Internal Revenue Code or the corresponding sections of prior revenue acts, and, therefore, are not entitled to exemption under those sections. Furthermore, there is no other provision of law under which an organization of your character can be held to be exempt from Federal income tax.

"Bureau rulings of June 11, 1934 and July 5, 1938 are hereby revoked.

"In view of all the facts and circumstances in your case it is held, with the approval of the Secretary of the Treasury, that you will not be required to file income tax returns for years beginning prior to January 1, 1943. You are, however, required to file returns for the year 1943 and subsequent years."

This ruling dated July 16, 1945, therefore, retroactively revoked the Club's tax-exempt status for the two prior years of 1943 and 1944.

The Commissioner's retroactive revocation of petitioner's tax-exempt status is, in my opinion, invalid.

In Rock Island, A. & L. R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, Mr. Justice Holmes made the often quoted statement that "Men must turn square corners when they deal with the Government"; but, subsequently, referring to this observation, Judge McDermott, of the Tenth Circuit, in Howbert v. Penrose, 38 F.2d 577, 581, 68 A.L.R. 820, added that "the government ought to turn square corners when dealing with its citizens." That policy has, apparently, heretofore been followed by the Commissioner of Internal Revenue. Thus, in an article, "Taxpayer's Rulings," in 5 Tax Law Review, page 115 (1950), Mr. J. P. Wenchel, formerly Chief Counsel of the Bureau of Internal Revenue, stated that, with exceptions not here relevant, "the policy of not disturbing a ruling once it has been issued, is now strongly ingrained in the administrative practice of the Bureau. Rulings are not issued indiscriminately, hypothetically, or for a useless purpose, and once issued they can be acted upon with reliance. This policy of fair play, which has been the unvarying policy of the Bureau for a decade and more, is so strong that even where a Supreme Court decision changes the Bureau's previous interpretation of the law, and such change operates to the benefit of the Government, the Bureau at times has not applied such changes retroactively to the detriment of taxpayers, including those who did not ask for a ruling. Much water has gone over the dam since the Couzens case [James Couzens, 1928, 11 B.T.A. 1040]. Taxpayers may find it more difficult to procure Bureau rulings than in those days, but once obtained, they can rely upon the Bureau's sense of fairness, and proceed to carry out their transactions knowing that they will not be faced with a later assessment contrary to what had been expected." [1]

1. In the above article, the author defined the term, "taxpayer's ruling," as used therein, "to denote a statement in writing, normally in letter form, by the Commissioner of Internal Revenue or a Deputy Commissioner, setting forth the

The foregoing policy would seem to have been confirmed by a Revenue Ruling,[2] issued by the Commissioner, strangely enough, after his revocation of petitioner's tax-exempt status, and after the decision of the Tax Court in this case, in the following language: "It is the general policy of the Internal Revenue Service to limit the revocation of a ruling with respect to an organization previously held to qualify under section 101 to a prospective application only, if the organization has acted in good faith in reliance upon the ruling issued to it and a retroactive revocation of such ruling would be to its detriment." This professed policy of the Commissioner of Internal Revenue of not revoking his ruling once it had been acted upon, is consonant with the view of this court, not merely as to proper policy to be pursued, but as to the governing law, which has, for many years, been repeatedly and consistently followed in the decision of cases coming before it.

In Woodworth v. Kales, 6 Cir., 26 F.2d 178, in an opinion written for the court by Judge Denison, it was held that a new Commissioner is without authority to revoke the determination of a former Commissioner and reassess an additional tax based upon what appears to him to be a better judgment of the matter, if there are no newly discovered facts, no fraud or mistake, clerical or otherwise, in any fundamental fact or matter of law. See also Routzahn v. Brown, 6 Cir., 95 F.2d 766, 771, and H. S. D. Co. v. Kavanagh, 6 Cir., 191 F.2d 831.

In Boyne City Lumber Co. v. Doyle, D. C.Mich., 47 F.2d 772 Judge Raymond stated that it was "unsupportable" to say that a determination of the value of the taxpayer's property could be reopened by each succeeding Commissioner because a view of the same facts resulted in a change of opinion, and it was held that the right to reopen such a determination depended upon the presence of a fraud, misrepresentation, or gross error. Further, in Penrose v. Skinner, D. C.Colo., 298 F. 335, the court assumed that no one could contend that a succeeding Commissioner could overrule or ignore the decisions of his predecessor unless the decisions were erroneous in law or were tainted with fraud. The reasons for these views have been variously stated in different adjudications.

Courts have uniformly held that when the executive department of the government is charged with the execution of a statute, places a reasonable construction upon it, and acts upon that construction for a number of years, changes in the construction of the statute are looked upon with disfavor, when parties who have contracted with the government on the faith of the old construction may be injured thereby. United States v. Alabama Great Southern Railroad Co., 142 U.S. 615, 12 S.Ct. 306, 35 L.Ed. 1134; Jacobs v. Prichard, 223 U.S. 200, 32 S. Ct. 289, 56 L.Ed. 405; Whitebird v. Eagle-Picher Lead Co., D.C.Okla., 28 F.2d 200, affirmed 10 Cir., 40 F.2d 479.

"If the language [of the statute] seemed to us doubtful (as it does not), the practically contemporaneous construction by the Treasury Department in its regulations would require us to exclude expenses incident to the organization of a corporation and the sale of its capital stock as being within the fair meaning of 'ordinary and necessary expenses incurred in carrying on the business' of such corporation." Simmons Co. v. Commissioner of Internal Revenue, 1 Cir., 33 F.2d 75, 76.

"Agencies do not enjoy a ruthless discretion to ignore their pasts. Like legislatures they must guard against illegal retroactivity. Like judges they are limited by res judicata and influenced by

---

position of the Bureau with respect to a specific tax problem or problems of a specific taxpayer or taxpayers. Revenue agents and other representatives of the Bureau often give oral advice to taxpayers, but taxpayers cannot rely with

impunity upon such representations or statements."

2. Revenue Ruling 54-164, 1954-1 C.B. 88, 91 (originally issued as I. R. Mimeograph No. 54-73, dated April 28, 1954).

stare decisis." [3] See National Labor Relations Board v. Guy F. Atkinson Co., 9 Cir., 195 F.2d 141, 150.

In this case, it is not claimed that the retroactive revocation was based upon any newly discovered facts, fraud, or mistake, clerical or otherwise, in any fundamental fact. The one ground upon which the Commissioner contends that the retroactive ruling was proper and valid is that the former determination of the prior Commissioner was based upon a mistake of law, and that the succeeding Commissioner merely corrected this mistake.

That the prior rulings of the other Commissioners were based on a mistake of law, and, consequently, that the rulings can be revoked with retroactive effect, is the keystone of the Commissioner's argument in this case.

While the foregoing may be said to constitute the general rule, it is not every ruling based upon a mistake of law that may be afterward subject to so-called correction by the Commissioner, with retroactive effect. Where the construction of a statute by a former Commissioner has not been plainly erroneous, or in conflict with express statutory provisions, a succeeding Commissioner may not revoke the former ruling with retroactive effect.

"It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with *express* statutory provision." (Emphasis supplied.) Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297.

A construction of a statute made by the body charged with its enforcement, which has long been followed in practical execution, and has been impliedly sanctioned by the re-enactment of the statute without alteration in the particulars construed, must, *when not plainly erroneous*, be treated as read into the statute. New York, N. H. and H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 401, 26 S.Ct. 272, 50 L.Ed. 515.

"This presumption that the department charged with the execution of the law has properly interpreted it is strengthened in proportion to the length of time such construction has obtained without challenge by the lawmaking power, so that, where such executive construction has been long continued, a court has a right to presume that Congress is content therewith. This exhausts the full force and effect of such construction, and, while not binding upon a court, nevertheless a court will be slow to depart therefrom, unless the language of the statute itself absolutely requires it to do so." Mayes v. Paul Jones & Co., 6 Cir., 270 F. 121, 130.

Where a statutory provision is ambiguous, and the executive department which must apply and enforce it declares a construction (not in itself ambiguous) for administrative purposes, and thereafter Congress reenacts the provision without substantial change, the courts will accept that construction unless it be plainly erroneous. Walker v. United States, 8 Cir., 83 F.2d 103, 107.

Regulations promulgated by the Treasury Department relative to income taxes have the force and effect of law, when not in conflict with *express* statutory provisions. Crocker v. Lucas, 9 Cir., 37 F.2d 275.

The construction given to the statute in this case by the former Commissioners cannot be said to be plainly erroneous and in conflict with the express provisions of the statute. That construction had been followed for twenty-three years by the Treasury Department. [4] The pri-

---

3. See article by Frank C. Newman, "Should Official Advice Be Reliable?" 53 Columbia Law Review, pages 374, 376.

4. Automobile clubs were granted tax immunity by O. D. 643, 3 Cum.Bull. 241

(1920). That ruling was followed by G. C.M. 2867, VII–1 Cum.Bull. 115 (1928); G.C.M. 3555, VII–1 Cum.Bull. 117 (1928).

or Commissioners had repeatedly asked for and received information from the taxpayer club and other automobile clubs with respect to every detail of their organization, activity, and characteristics; and had repeatedly held them to be tax-exempt under the provisions of the statute in question. When, finally, the last Commissioner "reconsidered," as he said, the status of automobile clubs and assessed taxes on the ground that they were not within the statutory exemption because they were not a "social club" and that they were not organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, the California State Automobile Association brought an action in the district court to recover overpayments of tax, and Judge Lemmon, now a member of the Court of Appeals of the Ninth Circuit, in a persuasive and comprehensive opinion in California State Automobile Association v. Smyth, D.C.1948, 77 F. Supp. 131, held that the association was a club within the meaning of the statute, and that it was organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, thus sustaining the rulings of the prior Commissioners of Internal Revenue.

When the same question came before the Tax Court in Chattanooga Automobile Club v. Commissioner, 1949, 12 T.C. 967, although the majority of the court held that the club was not exempt from taxation, four of the judges, in two separate opinions, dissented on the ground that the organization was a club within the meaning of the statute, and that it was organized and operated for a nonprofitable purpose.

It is true that the judgment of the district court in the Smyth case, supra, was reversed in Smyth v. California State Automobile Association, 9 Cir., 175 F.2d 752, in an able opinion written for the court by Chief Judge Denman, in which the statute was construed in the light of the doctrine of ejusdem generis, pursuant to which it was held that clubs "organized and operated exclusively for pleasure, recreation, and other nonprofit-

able purposes," in the language of the statute, meant that the "other nonprofitable purposes" must be concerned with pleasure and recreation. However, in a similar case, Keystone Automobile Club v. Commissioner of Internal Revenue, 3 Cir., 181 F.2d 402, 404, Judge Goodrich, speaking for the court, in arriving at the same conclusion as the Court of Appeals of the Ninth Circuit to the effect that the club was not exempt from tax, rested his view on different grounds and expressly declined to construe the statute according to the doctrine of ejusdem generis, saying: "We have been treated to a good sized dose of so-called canons of construction known as noscitur a sociis and ejusdem generis in connection with the argument. We find them just about as helpful in settling a specific case as those vials of distilled wisdom of the ages containing the phrases 'birds of a feather flock together' and 'a man is known by the company he keeps.' Throwing a vague phrase into law Latin does not make it any more useful in construing a statute." It may be noted that the opinion of the General Counsel of the Bureau of Internal Revenue, upon which the Commissioner revoked petitioner's tax-exempt status, was posited upon a construction of the statute according to the doctrine of noscitur a sociis.

The construction of the Act, in the opinion of Judge Goodrich, was based upon the fact that the statute set forth numerous types of organizations which were specifically exempted from taxation; and that the type represented by an automobile club was entirely different from those spoken of in the other paragraphs; that if the taxpayer automobile club's contention was right, Congress had thrown in a lot of unnecessary and confusing classifications in the other paragraphs of the section; and that it, therefore, appeared that Congress, in speaking of "Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes," was talking "about one type of organization among individuals which was, on the whole, different from the types talked

about in the other paragraphs of this section." Judge Goodrich, however, pointed out that no attempt had been made to give retroactive effect to the ruling of the new Commissioner's revocation of the tax-exempt status of automobile clubs.

Both Judge Denman and Judge Goodrich, in the above cases, took notice of the place occupied by the automobile in the life of the country forty years ago and the evolution that had occurred since that time, with the suggestion that passenger cars in the early years were not used for commercial purposes, and that it may well have been that car owners in those days did club together for their common interests. At some time, this changed, and, as Judge Goodrich said, the Commissioner had the right to change his mind about the relative place of automobile owners in the scheme of things. It, therefore, may well have been the case that automobile clubs at one time were, without question, exempt from tax, and properly held so by the Commissioner. If so, it would seem inequitable that when a succeeding Commissioner arrived at the conclusion that the situation had changed, he could revoke the tax-exempt status he had determined upon for such clubs, with retroactive effect.

In Chattanooga Automobile Club v. Commissioner of Internal Revenue, 6 Cir., 182 F.2d 551, 554, Judge Martin, speaking for the court in affirming the action of the Tax Court in the Chattanooga case, supra, set forth the grounds for holding an automobile club not exempt from taxation in the following language:

"The petitioners contend that the words 'other nonprofitable purposes' should not be construed as the Commissioner of Internal Revenue construed them to mean nonprofitable purposes *similar* to purposes of pleasure and recreation. This argument overlooks the fact that preceding subsections of section 101 of the Internal Revenue Code specifically exempt nonprofit organizations operated for literary, educational, scientific, charitable, or religious purposes, chambers of commerce, business and civic leagues, and other specified eleemosynary institutions. Were the insistence of the petitioners accepted, many of these specific exemptions would be mere surplusage, inasmuch as they would fall within the sweep of the expression 'other nonprofitable purposes' contained in subsection 9. We think the words 'other nonprofitable purposes' carry in the context a plain connotation that the purposes must be construed as coming within the same classification as pleasure and recreation. The services rendered by each club were in part to automobiles used for business purposes and, therefore, not operated 'exclusively' for pleasure, recreation, and other similar purposes."

As far as the power of the Commissioner to change the construction of a statute *with prospective effect* goes, Judge Martin, in the Chattanooga case, supra, quoted from Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 60 S.Ct. 18, 84 L.Ed. 101, wherein the Supreme Court said:

" 'The oft-repeated statement that administrative construction receives legislative approval by reenactment of a statutory provision without material change (United States v. Dakota-Montana Oil Co. [288 U.S. 459, 466, 53 S.Ct. [435], 77 L.Ed. 893]) * * * does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers.' "

All of the above serves only to show clearly in what different lights the judges of the Tax Court, the district court, and the courts of appeals viewed the statute, even when they agreed in their conclusions, and that the interpretation and construction placed upon the statute

during twenty-three years by succeeding Commissioners of Internal Revenue, who studied and examined all the various provisions of the Act, repeatedly, intently, and with specific application to the club in question, was a fair interpretation, and, certainly, not plainly erroneous or contrary to the express words of the statute. As such, it cannot be revoked by a succeeding Commissioner with retroactive effect.

It is conceivable, too, that the authorities cited by the government to sustain the changed view of the successor Commissioner, might have also sustained him if he had found it proper to construe the statute in the sense now contended for by the taxpayer. For administrative agencies designated by Congress as specialists in a particular field and advised by experts are, within a wide area, in a better position than a reviewing court to determine appropriate applications of statutes which they are directed to administer. National Labor Relations Board v. Medo Photo Supply Corp., 2 Cir., 135 F.2d 279. "The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. * * * The officers concerned are usually able men, and masters of the subject. Not infrequently they are the draftsmen of the laws they are afterwards called upon to interpret." United States v. Moore, 95 U.S. 760, 763, 24 L.Ed. 588.

What is the principle of law to be applied in such cases as the one before us? It is the rule that the doctrine of estoppel must be applied with great caution as against the government and its officials. Some courts have, however, applied general equitable principles to prevent inequitable governmental action, as in suits for refunds, and this doctrine has been denominated "quasi estoppel" by some authorities.

As to estoppel against the government, that principle is summed up in Ritter v. United States, 3 Cir., 28 F.2d 265, 267:

"It is true * * * that when the sovereign becomes an actor in a court of justice, its rights must be determined upon those fixed principles of justice which govern between man and man in like situations. * * * The acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government, if the officers have acted within the scope of their authority."

In Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 186, 76 L.Ed. 348, it was held that where the Interstate Commerce Commission had, upon complaint and after hearing, declared what was the maximum reasonable rate to be charged by a carrier, it may not, at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, subject a carrier which conformed thereto to the payment of reparation measured by what the Commission then held it should have decided in the earlier proceeding, by declaring its own prior finding as to reasonableness to be erroneous. In passing upon the case, the court said: "The Commission's error arose from a failure to recognize that, when it prescribed a maximum reasonable rate for the future, it was performing a legislative function, and that, when it was sitting to award reparation, it was sitting for a purpose judicial in its nature. In the second capacity, while not bound by the rule of *res judicata,* it was bound to recognize the validity of the rule of conduct prescribed by it, and not to repeal its own enactment with retroactive effect. It could repeal the order as it affected future action, and substitute a new rule of conduct as often as occasion might require, but this was obviously the limit of its power, as of that of the Legislature itself."

In Stockstrom v. Commissioner of Internal Revenue, 88 U.S.App.D.C. 286,

190 F.2d 283, 30 A.L.R.2d 443, it appeared that the taxpayer did not file gift tax returns in 1938 on a transfer to a trust because, under the Commissioner's interpretation, such gifts were of present interests and entitled to a $5,000 exemption. The omission to file was approved in 1941. However, in 1948, following a Supreme Court decision, the Commissioner decided that the transfers in 1938 were taxable, and he, therefore, assessed a deficiency. The case went off on the question of whether the statute of limitations barred the deficiency assessment. Obviously, if a return had been filed, the deficiency assessment would have been barred. The court held that the Commissioner lacked authority to make the assessment. The holding was put on the ground that one may not found a claim upon an omission which he himself induced. In this regard, the court quoted from Mr. Justice Cardozo in Stearns Co. of Boston, Mass. v. United States, 291 U. S. 54, 54 S.Ct. 325, 78 L.Ed. 647: "'The applicable principle is fundamental and unquestioned. "He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect: 'This is your own act, and therefore you are not damnified.'" * * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own' inequity or take advantage of his own wrong. * * * A suit may not be built on an omission induced by him who sues.'" [190 F.2d 288.] The court in the Stockstrom case, supra, continued: "It has been well said that the government should always be a gentleman. Taxpayers expect, and are entitled to receive, ordinary fair play from tax officials. We regard as unconscionable the Commissioner's claim of authority to assess a tax in 1948 because of Stockstrom's failure to file a return for 1938, when the

Commissioner himself was responsible for that failure." See also the scholarly and comprehensive opinion of Judge Mathes in Smale & Robinson, Inc., v. United States, D.C.Cal., 123 F.Supp. 457.

The taxpayer did not have notice, as claimed herein by the Commissioner, during 1943 and 1944, of the pending revocation of its exemption rulings. The Commissioner contends that it had such notice as a result of the opinion expressed in the General Counsel's Memorandum No. 23688, issued in 1943. That memorandum involved the American Automobile Association, which was an organization consisting of other incorporated clubs, and having rules against membership of any individuals. The memorandum held that the term, "club," contemplated individual members and not an association composed entirely of artificial members; and then, although it had no relation to the organization in question, the memorandum went on to say that even if there were individual members, the organizations would not qualify as clubs because there was not a commingling of members in fellowship. Such opinion of the General Counsel, issued in the case of a club composed of a number of corporate clubs, was not notice to petitioner herein of revocation of its tax-exempt status as of the time that the opinion was issued. As a matter of fact, in the Commissioner's letter to the club in 1945, he did not even then notify it of the revocation of its exemption from tax, and had not, at that time, decided to do so. The Commissioner's letter merely informed the taxpayer that the Bureau was reconsidering the question of exemption "in the light of the opinion of the Chief Counsel," and asked for the filing of a questionnaire—consisting of the same information the Commissioner already had in his files from this taxpayer. It is difficult to see how it could be maintained that the taxpayer had notice of the pending revocation of its tax-exempt status in 1943 as a result of the issuance of the Chief Counsel's opinion, when in 1945, the Commissioner first notified the taxpayer that he was only proceeding to take the matter under

advisement and to reconsider, at that time, the tax-exempt status of the club. Petitioner had established its own tax-exempt status in accordance with Article 101–1 of Regulation 94,[5] in force during 1938, submitting to the Commissioner the information required by such regulation. Substantially the same provisions were contained in the regulations in force during 1934 when petitioner first submitted information to the Commissioner in obtaining the first ruling that it was exempt from taxation.

As to Section 3791(b) of the Internal Revenue Code, it would not seem to apply when the Commissioner does not have the power to make a retroactive ruling; and it could hardly be contended that the Commissioner, in such a case as the one before us, had the power to revoke, with retroactive effect, a tax-exempt status theretofore acquired for any period he considered proper, whether for two years or twenty years. Congress had repeatedly, over a period of a quarter of a century, reenacted Section 101 (9) of the Internal Revenue Code, subsequent to the determinations of the various Commissioners that automobile clubs, and petitioner club in particular, were tax-exempt. The Treasury's power to make retroactive amendments, changing Treasury regulations or decisions, may not be exercised where Congress has, by repeated re-enactments, given its sanction to the existing regulations. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. See Studies in Federal Taxation, Randolph E. Paul, Third Series, pages 420, et seq.,

Harvard University Press, 1940. The same principle is here applicable, and a succeeding Commissioner may not retroactively revoke the several prior determinations of his predecessors that petitioner is tax-exempt where Congress has, by repeated re-enactments of the pertinent provision of the statute, given its sanction to such prior determinations. As to the showing of hardship suffered by petitioner through retroactive revocation of its exemption from taxation, the fact that no reserves had been set up for such comparatively large tax for a two-year period, would seem to establish the prejudice that would be suffered by petitioner to its substantial injury, and if the Commissioner had the right, as he claims, to revoke retroactively petitioner's tax exemption for a possible thirteen-year period, it might well result in complete insolvency of the taxpayer.

Petitioner relied in good faith on the rulings made by the Commissioner in 1934 and 1938 holding it exempt from taxation. In keeping with the instructions received in the ruling letters, petitioner did not file income tax returns, since no change had occurred in the organization of the club, its purposes, or activities; and in reliance upon the tax-exempt rulings, it did not, during 1943 and 1944, set up any reserve or make any other provision to cover the income and excess profits taxes later asserted by the Commissioner for those years. Petitioning club was operated, during 1943 and 1944, in all respects on the premise that it was exempt from taxation. As a

---

5. "Art. 101–1. Proof Of Exemption.—A corporation is not exempt merely because it is not organized and operated for profit. In order to establish its exemption and thus be relieved of the duty of filing returns of income and paying the tax, it is necessary that every organization claiming exemption file an affidavit with the collector of the district in which it is located, showing the character of the organization, the purpose for which it was organized, its actual activities, the sources of its income and its disposition, whether or not any of its income is credited to surplus or may inure to the benefit of any private shareholder or individual, and in general all facts relating to its operations which affect its right to exemption. To such affidavit should be attached a copy of the charter or articles of incorporation, the by-laws of the organization, and the latest financial statement, showing the assets, liabilities, receipts, and disbursements of the organization. * * * " See also Section 29.101–1 of Treasury Regulation 111, promulgated under the Internal Revenue Code of 1939, as amended by T.D. 5381, 1944 Cum.Bull. 188, 189, and Section 29.101–2, as added by T.D. 5381, supra.

result of the retroactive application of his 1945 ruling, the Commissioner asserted a deficiency in income and excess profits taxes for the years 1943 and 1944 in the amount of $384,059.97.

Under the circumstances above set forth, it seems to me that it would be most inequitable to subject petitioner to payment of the deficiency claimed in this case as a result of the retroactive revocation of its exemption from taxation —covering a period of a quarter of a century and resulting from repeated rulings of the Commissioners of Internal Revenue in that period. In my opinion, the decision of the Tax Court should be reversed.